IN THE SUPERIOR COURT



**FILED**
April 24, 2024 02:06 PM
ST-2019-CV-00602
TAMARA CHARLES
CLERK OF THE COURT

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS / ST. JOHN

| | |
|---|---|
| JODY OLSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. ST-2019-CV-00602 |
| PLAINTIFF, | Class Action |
| V. | |
| VIRGIN ISLANDS WATER AND POWER AUTHORITY AND LAWRENCE J. KUPFER, | Complex Litigation Division |
| DEFENDANTS, | Jury Trial Demanded |
| AND | |
| GOVERNMENT OF THE VIRGIN ISLANDS, | |
| INTERVENOR. | |

Cite as: 2024 VI Super 17

**Appearances:**

**JOSEPH A. DIRUZZO, III, ESQ.**
DiRuzzo & Company
Ft. Lauderdale, FL 33301
*For Plaintiff*

**DIONNE G. SINCLAIR, ESQ.**
**PATRICIA QUINLAND, ESQ.**
Virgin Islands Water and Power Authority
St. Thomas, VI 00804

**THOMAS J. WELLING, JR.** (*pro hac vice*)
Venable LLP
New York, NY 10020
*For Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer*

**IAN S.A. CLEMENT, ESQ.**
Virgin Islands Department of Justice
St. Thomas, VI 00802
*For Intervenor Defendant Government of the Virgin Islands*

## MEMORANDUM OPINION

**WILLOCKS,** *Administrative Judge.*

¶1 **BEFORE THE COURT** is a Recommendation by the Staff Master addressing the following motions: **(1)** Motion to Take Judicial Notice filed by Plaintiff Jody Olson (hereinafter "Plaintiff" or "Olson"); **(2)** Motion to Deem Conceded filed by Olson; **(3)** Joint Motion for Judgment on the Pleadings filed by the Virgin Islands Water & Power Authority (hereinafter "WAPA") and Lawrence J. Kupfer (hereinafter "Kupfer") (collectively "Defendants"); and **(4)** Motion to Declare / Hold Sections 111(a) & 120 of Title 30 of the Virgin Islands Code Unconstitutional filed by Olson. Also before the Court are the following responses to the Recommendation: **(5)** Motion to Adopt (in Part), Modify (in Part), & Reject (in Part) filed by Olson; **(6)** Response to Staff Master's Recommendation filed by the Defendants; and **(7)** Motion to Adopt Staff Master's Recommendation About Plaintiffs' Constitutional Challenge to Title 30 of the Virgin Islands Code, Sections 111 and 120 and Notice of Joinder filed by Intervenor Government of the Virgin Islands (hereinafter "Government").

¶2 Having considered the Recommendation *de novo* as well as the parties' responses to it, the Court will, for the reasons explained below, disregard the Government's motion and accept only its notice of joinder, overrule the parties' objections and grant their competing requests to adopt those portions of the Recommendation they agree with, overrule and deny their requests to modify or amend those portions they disagree with, and adopt the Recommendation, appended to this Opinion, in all respects except two. The Court will reject the Staff Master's recommendation to allow Olson to stand on her current pleading, and deny Olson's related request to interlineate her complaint, rather than file an amended pleading. The Court will also reject the Staff Master's recommendation to allow the Defendants to file an amended answer. However, to address Olson's concerns, and ensure the Defendants do not evade the consequences of having failed to comply with Rule 8 of the Virgin Islands Rules of Civil Procedure in preparing their

answer, the Court will direct the Defendants, in their forthcoming answer, to admit those paragraphs to the forthcoming second amended complaint that the Court finds they admitted to in the First Amended Complaint. Otherwise, the Recommendation will be adopted in full. Finally, the Court will grant the Defendants' request to dismiss Kupfer and Olson's request to substitute the current Chief Executive Officer of WAPA.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶3 The Staff Master detailed the procedural history of this case in the Recommendation, *infra*. This Court also detailed some of the factual background in a prior Opinion. *See generally Olson v. V.I. Water & Power Auth.*, 2023 VI Super 61, ¶¶ 2-3 (hereinafter "*Olson I*"). As further background for this Opinion, the Court notes the following allegations, taken from the pleadings. Olson is a customer of WAPA, residing on St. Thomas. (*See* First Am. Compl. ¶¶ 4, 24, filed Jan. 23, 2020.) As required by statute, she paid a cash deposit to WAPA to receive electricity services. *See id.* ¶¶ 24-25. That makes her—and all customers of WAPA—creditors of WAPA, she contends. *See id.* ¶ 26. Olson avers that WAPA is insolvent because its revenues cannot meet its expenses. *See id.* ¶¶ 8, 32. She fears that

> based on WAPA's tenuous financial position, WAPA: (i) will not be able to provide electrical services to the Plaintiff, (ii) will not be able to refund the Plaintiff's customer deposit and will not be able pay the Plaintiff the statutory interest due to her under 30 V.I.C. § 9a(b), and (iii) will negatively effect not only current Virgin Islands residents, but several generations of Virgin Islands residents (and by necessary extension the Virgin Islands as a viable location to live). *Id.* ¶ 74.

¶4 Olson commenced this action initially on her own behalf, but then via an amended complaint on behalf of a class of customers of WAPA, to obtain a judgment declaring the Territory's sole electricity supplier in a state of emergency and insolvent. Olson further seeks a judgment declaring the amount of statutory interest due to her and the class on their cash deposits, and an injunction ordering WAPA to set aside sufficient funds to be able to comply with its obligation to refund the deposits with interest.

¶5     Olson also asserts a second allegation, that WAPA gives preferential treatment to government officers, departments, and agencies by supplying them with electricity without terminating service for nonpayment. Olson claims this billing practices is discriminatory because WAPA "treat[s] . . . [its] customers (governmental versus non-governmental) differently." *Id.* ¶ 78. Since "[t]he Virgin Islands Bill of Rights, as interpreted by the Virgin Islands Supreme Court in *Balboni v. Ranger American of the V.I.* . . . provides for more protections than the federal Bill of Rights[,]"* *id.* ¶ 77, she seeks a judgment declaring WAPA's practice of not terminating service for nonpaying government customers discriminatory. She seeks an injunction prohibiting the practice, and any other appropriate relief including costs and fees.

¶6     The Defendants appeared and, after a delay not relevant to this Opinion, answered the First Amended Complaint and then moved for judgment on the pleadings. Pertinent here, they denied that Olson was a customer or that she had a cash deposit. Olson had earlier filed a motion for a preliminary injunction and a motion to appoint a receiver, which the Defendants opposed and which this Court later denied. She then filed two more motions – a motion to take judicial notice of documents filed with the Virgin Islands Public Services Commission, and a motion to deem certain portions of the Defendants' answer conceded. The Court heard argument on the motion for judgment on the pleadings, and stated from the bench that the motion would be denied, but gave the parties leave to address an issue the Defendants pressed, namely whether by denying (rather than admitting) that Olson was a customer of WAPA, the Defendants had foreclosed judgment on the pleadings as an option. The Court also "inquired into the Defendants' assertion that the Court could not grant Olson (or the class) any relief because Sections 111(a) and 120 of Title 30

---

* As noted in *Balboni*, by "Virgin Islands Bill of Rights" the Virgin Islands Supreme Court was referring to "section 3 of the Revised Organic Act of 1954 . . . ." *See Balboni v. Ranger Am. of the V.I.*, 70 V.I. 1048, 1053 (2019); *see also id.* at 1055-56 & n.3 (citing and discussing 48 U.S.C. § 1561).

of the Virgin Islands Code, respectively, exempt all property of WAPA from judicial process or execution, and prohibit the issuance of injunctions against WAPA.'" *Olson v. V.I. Water & Power Auth.*, 2023 VI Super 64, ¶ 2 (citation omitted) (hereinafter "*Olson II*"). "'Olson asked for leave to consider the issues and file a response.'" *Id.* (citation omitted). "The response Olson filed was a motion to hold or declare both statutes unconstitutional." *Id.*

¶7      "In the interim, as briefing was underway on Olson's constitutional challenge, this Court, in its former administrative capacity as Presiding Judge of the Superior Court, filled the staff master position the Supreme Court of the Virgin Islands established to assist the Complex Litigation Division." *Id.* ¶ 7. The Staff Master proceeded to hear argument on the supplemental briefing the Court allowed, as well as on the other pending motions, including Olson's motions to take judicial notice and the motion to deem conceded, but not ancillary motions pertaining to these motions. *But cf. id.* The Staff Master then issued a Recommendation addressing Olson's constitutional challenge, the Defendants' motion for judgment on the pleadings, and Olson's motions to take judicial notice and to deem conceded.

¶8      Olson and the Defendants jointly asked the Court for additional time to respond and for leave to file simultaneous responses to the Recommendation and one reply to each other's response, which the Court allowed. Olson timely filed her motion to adopt in part, reject in part and modify in part, which the Defendants replied to. The Defendants also timely filed a response, which the Court construes as a motion, that Olson replied to. However, both sides neglected to serve or otherwise include the Government, who had intervened by then as a defendant, pursuant to Rule 5.1 of the Virgin Islands Rules of Civil Procedure, to address Olson's constitutional challenge. The Government also failed to object to its exclusion. Consequently, the Court ordered the Government to file a response to Olson's motion and to the Defendants' response (construed as a motion). *See id.* ¶ 22. The Government filed a notice of joinder in the Defendants' response as well as a motion to adopt the Staff Master's Recommendation on the

constitutional challenge. The Government did not file a response to Olson's motion, however.

## II.    LEGAL STANDARD

¶9      "Judges reviewing orders and recommendations of [staff] masters exercise a quasi-appellate role." *Erbey Holding Corp. v. BlackRock Fin. Mgmt., Inc.*, 2023 VI Super 75, ¶ 12. They "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the [staff] master with instructions." V.I. R. Civ. P. 53(f)(1). "To be clear, the judge 'does not act as an appellate court when reviewing the recommendations of a master.'" *Erbey Holding Corp.*, 2023 VI Super 75 at ¶ 13 (ellipses and citation omitted). "But the judge does 'assume a quasi-appellate role that entails assessing the legal validity of the conclusions reached by the non-judicial official.'" *Id.* (brackets and citation omitted). "This 'review permits correction of possible error at the earliest time and will also give the appellate court the benefit of the trial court's reasoned consideration.'" *Id.* (brackets and citation omitted). However, "a 'do-over' as such is [not] required, even when objections are raised[,]" *id.* ¶ 15, largely because "[c]ourts avoid using judicial adjuncts in a way that increases, rather than decreases, their work." *Id.* "Doing over the work the staff master performed would be wasteful and contrary to the reason the position was created." *Id.*

¶10     Findings of fact, which the parties object to, are reviewed *de novo, see* V.I. R. Civ. P. 53(f)(2), as well as objections to conclusions of law made or recommended are also reviewed *de novo, see* V.I. R. Civ. P. 53(f)(3). "But *de novo* review does not require that the court ignore the recommendation and do the work itself. '*De novo* means that the court's inquiry is not limited to or constricted by the record nor is any deference due the conclusions under review.'" *Erbey Holding Corp.*, 2023 VI Super 75 at ¶ 15 (quoting *In re: Infant Sherman*, 49 V.I. 452, 460 (2008) (Swan, J., concurring)). Instead, review is *de novo* because "ultimate authority remains with the judge." *Id.* at ¶ 12. By contrast, "'clear error is the applicable legal standard for reviewing an order or recommendation of . . . [the staff] master no one objected to.'" *Id.* at ¶ 14 (quoting *Stanley v. V.I. Bureau of Corr.*, 2022 VI Super 77, ¶ 29). And "procedural matters are

reviewed only for an abuse of discretion." *Stanley*, 2022 VI Super 77 at ¶ 29; *accord* V.I. R. Civ. P. 53(f)(5) ("Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.").

¶11 "[A]fter conducting a *de novo* review, the court can adopt the [staff] master's recommendation in its entirety without further analysis." *Erbey Holding Corp.*, 2023 VI Super 75 at ¶ 16. "The court can also issue an opinion adopting and incorporating the [staff] master's recommendation as its own." *Id.* "When incorporating a recommendation, the court can append or attach the [staff] master's recommendation to its own opinion." *Id.* "Alternatively, the court can issue its own opinion that adopts a portion of the recommendation, that amplifies or modifies the recommendation, or that addresses specific objections." *Id.* at ¶ 17. "The court can also reject the recommendation but with reasons why to enable later appellate review." *Id.*

## III.    DISCUSSION

¶12 Before turning to the parties' responses to the Recommendation, the Court must first address two preliminary matters: the Government's failure to comply with the Court's prior directive, and a disagreement between Olson and the Defendants as to whether the motion for judgment on the pleadings was denied before the Staff Master addressed it by recommendation.

### *Government's Motion to Adopt / Notice of Joinder*

¶13 In its prior Opinion, this Court directed the Government to "**SERVE** and **FILE** one or more **RESPONSES** to the motion filed by Plaintiff . . . and the response (treated as a motion for purpose of this Memorandum Opinion and Order) filed by Defendants . . . ." *Olson II*, 2023 VI Super 64 at ¶ 22. The reason the Court issued this directive is because the Government had intervened and, thus, become a party and Rule 6-1 directs that "'a party shall file a response within 14 days after service upon the party of any motion.'" *Id.* at ¶ 21 (quoting V.I. R. Civ. P. 6-1(f)(1)) (ellipsis omitted)).

¶14     Technically, Rule 53 of the Virgin Islands Rules of Civil Procedure only permits the filing of a motion to adopt or to modify, or an objection to, a recommendation. *See* V.I. R. Civ. P. 53(f)(2) ("A party may file objections to – or a motion to adopt or modify – the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time.").[†] Olson filed a motion in response to the Recommendation to adopt it in part, modify it in part, and reject it in part. There was no ambiguity about what she filed. She moved for specific relief. Thus, the Government and the Defendants had a duty to file a response to her motion per Rule 6-1(f)(1). The Defendants, by contrast, did not file a motion in response to the Recommendation, at least not according to its title. They filed a response. However, because their "response" argued for and against adopting portions of the Recommendation, the Court construed it as a motion. *See Olson I,* 2023 VI Super 61 at ¶ 17 n.4. Olson and the Government also had a duty to file a response to the Defendants' response (construed as a motion).

¶15     As noted, Olson and the Defendants asked to be allowed to file one response to the Recommendation and one reply each, rather than two motions, two responses, and two replies. They did not include the Government and the Government did not object. However, in observing that "[e]veryone, including the Government, [had] treated the Government as if it were an *amicus curiae* not a party-defendant[,]" *Olson I,* 2023 VI Super 61 at ¶ 11, the Court clarified that the Government was, in fact, a party, and like any other party, it had to comply with the obligations imposed by the rules of procedure,

---

[†] As this Court previously observed, "the staff master . . . [has] discretion to manage the sequence in which he or she acts on matters within her or his scope of authority." *In re: Limetree Bay Commercial Litig. Cases,* 2023 VI Super 66, ¶ 13 n.8. The staff master also has discretion to decide whether to "make her or his recommendation available on Lexis or Westlaw or when an opinion as opposed to an order should be issued." *Erbey Holding Corp.,* 2023 VI Super 75 at ¶ 18 n.*. The Court also reiterates that, while it is not for the judges "to dictate how the staff master issues recommendations[,]" the staff master must "find an appropriate balance between issuing one recommendation per motion, on the one hand, and one recommendation on multiple, unrelated motions, on the other hand, particularly if it necessitates a motion to exceed the page limits." *Olson II,* 2023 VI Super 64 at ¶ 24 n.2 Here, by addressing four motions in one recommendation, two of which (Olson's motion to deem conceded and her motion to take judicial notice) the Government did not have had a right to respond to, *cf. Olson I,* 2023 VI Super 61 at ¶ 18 n.5, the Staff Master may have, inadvertently, necessitated Olson seeking an extension of the page limits. *Cf. Olson II,* 2023 VI Super 64 at ¶ 24 n.2. "All motions must be twenty pages or less unless leave to include more pages is obtained in advance." *Id.* at ¶ 23 (citing V.I. R. Civ. P. 6-1(e)). Rule 53(f) motions are not exempt from this limit.

including the obligation to file responses to motions. To that end, the Court ordered the Government to file a response to Olson's motion and to the Defendants' response (construed as a motion). The Government complied in part by filing its notice of joinder in the Defendants' response. The Government did not comply with respect to Olson's motion, however, because it did not file a response.

¶16 Instead, the Government filed its own motion to adopt the Recommendation, but a motion that failed to comply with the rules of procedure because it was half a page in length, with the entire document—including the caption, the signature block, the certificate of service, and the portion joining the Defendants' response—totaling three pages. The Government merely took a position—that the Court should adopt the Recommendation's conclusions on the constitutional challenge. What the Government filed does not qualify as a motion, however, and to be clear, the Court did not order the Government to respond to the Staff Master's Recommendation. *See Olson I*, 2023 VI Super 61 at ¶ 22. The Court does not believe that it has that authority because litigants can choose not to respond, in which case courts will review recommendations for clear error. *Cf. Stanley*, 2022 VI Super 77 at ¶ 29. Of course, the Government could have filed its own motion, but only if it obtained leave to file out of time first. *See Olson I*, 2023 VI Super 61 at ¶ 22 ("Should the Government wish to respond directly to the Staff Master's recommendation, whether by filing a motion to adopt or modify or an objection, the Government can file a motion for leave to file out of time, supported by whatever arguments it deems proper given the circumstances." (citation omitted)). The Government did not ask for leave to file out of time, and filing a motion to adopt in lieu of complying with this Court's directive (or the rule's requirement) to respond to Olson's motion was improper.

¶17 In addition, the motion that the Government did file had to comply with the rules. Notices of joinder filed in complex cases "cannot make arguments, raise new arguments, or request relief." Standing Order No. 4. § 8, *In re: Complex Litig. Cases Pending in the Super. Ct. of the V.I.*, Case No. SX-2019-

MC-00035, 2019 V.I. LEXIS 28, *9 (V.I. Super. Ct. Mar. 5, 2019). But written motions, especially motions filed in complex cases, must include argument "'and contain appropriate citations to supporting legal authority.'" *Olson II*, 2023 VI Super 64 at ¶ 23 (quoting *Evans-Freke v. Evans-Freke*, 75 V.I. 407, 430 n.8 (2021) (Swan, J., concurring)); *accord* V.I. R. Civ. P. 6-1(a) ("All motions must . . . (2) state with particularity the grounds for seeking the order, including a concise statement of reasons and citation of authorities . . . ."). Here, the Government's motion failed to make any arguments or cite any legal authorities in support. It also was filed late and without leave of court, and possibly in lieu of filing a response to Olson's motion. But responses, not motions, are filed in response to a motion. *Cf. Alleyne v. Diageo USVI, Inc.*, 69 V.I. 307, 316 n.3 (Super. Ct. 2018). For these reasons, the Court will disregard the Government's motion and treat it solely as a notice of joinder.

### *Posture of the Motion for Judgment on the Pleadings*

¶18    In her response to the Recommendation, Olson moves, on the one hand, to adopt the Staff Master's recognition that this Court denied the Defendants' motion from the bench and, on the other hand, to reject the Staff Master's recommendation that by granting the parties leave to file supplemental briefs, the Court either implicitly vacated its bench ruling or granted the Defendants leave to seek reconsideration. The Defendants, initially, did not address the Staff Master's concerns about the posture of their motion, but did reply to Olson's arguments. In their reply, the Defendants agree with the Staff Master that by granting the parties leave to file supplemental briefs, the Court "reserved judgment to afford Defendants the opportunity to submit supplemental briefing on whether the existence of any disputed facts, versus only material disputed facts, bars judgment on the pleadings." (Defs.' Reply Br. in Resp. to Staff Master's Recommend. 4, filed Jan. 19, 2023.) The posture of the motion for judgment on the pleadings matters here because the Staff Master is correct, a judicial adjunct does not have authority to reconsider a judicial officer's ruling on a dispositive motion. Ergo, if this Court denied the motion from the bench, there was

nothing for the Staff Master to address by recommendation. However, the Staff Master does have authority to issue a recommendation on any matter pertinent to the proceedings, which includes a motion for reconsideration of a ruling on a dispositive motion. *See In re: Auth. for the Creation & App't of Staff Master for the Complex Litig. Div. of the Super. Ct. of the V.I.*, Admin Order No. 2021-0012, 2021 V.I. Supreme LEXIS 14, *3 (V.I. Aug. 12, 2021) ("Make formal and informal recommendations and reports to the judge regarding *any matter* pertinent to the proceedings . . . ." (emphasis added)). Additionally, the Staff Master also has discretion to formally recommend, as a matter pertinent to the proceedings, that the judge revisit a prior decision since courts retain the discretion to reexamine their interlocutory orders at any time before a final order is entered. *See Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 609 (2012) ("[T]he common law confers trial courts with the discretion to revise any interlocutory order at any time prior to entry of a final judgment.").

¶19     Olson moves the Court to adopt the Staff Master's recognition that the Court denied the motion from the bench and then asks, implicitly, that the Court disregard the Staff Master's analysis of the merits of her claims. She focuses on this Court's in-court colloquy with the Defendants, pointing to the Court having invited the Defendants to show the Court where it was wrong, to change the Court's mind, and so forth. She assets that "[b]eing 'wrong' means that the motion was already ruled upon, just wrongly so (according to the Defendants)." (Pl.'s Mot. to Adopt (in Part), Modify (in Part), & Reject (in Part) 9, filed Dec. 15, 2022 (hereinafter "Pls.' Mot.").) Olson also quotes a portion of the transcript where the Court stated from the bench that the motion would be denied. *See id.* at 8 ("'The motion for judgment on the pleadings is going to be denied.'" (quoting Hr'g Tr. 5:4-5 (Sept. 7, 2021)). Olson then argues that the Defendants cannot meet the standard for reconsideration, something she also argued in her supplemental brief. But she fails to address the significance of the Court having granted the parties leave to file supplemental briefs.

¶20    The Defendants were not given a deadline to file a new motion, or to refile a prior motion. Instead, they were given leave to file supplement briefing on a previously-filed motion, something only permitted with leave of court. *Cf.* V.I. R. Civ. P. 6-1(c) ("Only a motion, a response in opposition, and a reply may be served on other parties and filed with the court; further response or reply may be made only by leave of court obtained before filing."). What's more, the Court does not have to give the parties leave to seek reconsideration. The rules of procedure already provide for it. *See generally* V.I. R. Civ. P. 6-4. Court proceedings can be dynamic and generally should be considered on the whole, and parties should avoid isolating a portion of the hearing to the exclusion of the entire proceeding. During the same hearing, this Court denied several motions from the bench, including Olson's motion for a preliminary injunction and her motion to appoint a receiver. (*See* Hr'g Tr. 3:23-25 ("The motion to have the state of emergency -- for WAPA to be declared under the state of emergency is denied."); *see id.* at 4:3-4 ("Also, the motion for a receivership is also denied.").) The Court also denied the Defendants motion for reconsideration from the bench. *See id.* at 4:19-21 ("[T]he motion for reconsideration of certification of the class action is denied."). Yet, when the Court turned to the motion for judgment on the pleadings, the Court first indicated how it intended to rule, then permitted argument from the Defendants, and finally granted the parties leave to file supplemental briefs. If the Court had intended only to announce its ruling from the bench, it would not have allowed argument and certainly would not have permitted supplemental briefing since motions cannot be supplemented after they are ruled on. Instead, the Court simply signaled that it was inclined to deny the Defendants' motion, but then withheld ruling after hearing argument and while awaiting further briefing. Thus, there is no clear error, as Olson contends, in the Staff Master addressing the Defendants' motion. (*See* Pl.'s Mot. 9 ("Thus, given this context, it was clear (and the Rec. clearly erred) that the motion for judgment on the pleadings was denied but the Defendants opportunity to show the Court that it was wrong via the standard procedural vehicle – a motion for reconsideration.").) Even if the motion

had been denied, the Staff Master could still address it by recommendation and recommend that the court revisit its bench ruling given the motion's significance to these proceedings.

¶21    For these reasons, the Court finds that Olson and the Staff Master are mistaken about the posture of the motion for judgment on the pleadings. This would require the Court to reject the Staff Master's third recommendation, *infra*, that the Court vacate its September 7, 2021 bench ruling as there would be nothing to vacate if the Court did not deny the motion for judgment on the pleadings from the bench. However, since oral orders are enforceable pending reduction to writing, *see* V.I. R. Civ. P. 85, and because Olson and the Staff Master believed (based on their reading of the transcript) that the Court denied the Defendants' motion, the Court will adopt the Staff Master's recommendation and vacate the bench ruling out of an abundance of caution, particularly because the record of proceedings prepared by the clerk states that the motion was denied, and that could constitute a reduction to writing. *Cf. World Fresh Mkts., LLC v. Henry*, 71 V.I. 1161, 1179 n.13 (2019) (discussing minute orders as clerk documenting oral orders in the court record). The outcome, and what legal standards apply here, should not turn on finer points of grammar such as the distinction between the use of "denied" versus "would be denied." Olson's arguments and the Staff Master's concerns give the Court reason to believe exercising its discretion is proper here. *Cf. Island Tile & Marble*, 57 V.I. at 609.

            *Objections to the Recommendation*

¶22    Turning first to Olson's motion to deem conceded, the Defendants object to the Staff Master's recommendation that the Court disregard their response to the motion. Their objection is overruled. As the Staff Master explained, *infra*, "[t]he Defendants did not respond to Plaintiff's motion for 659 days. Plaintiff filed her motion on March 18, 2020. Without requesting leave of court or explaining the delay, the Defendants filed their response in opposition on January 6, 2022." Olson objected, and rather than file a motion and show good cause why their response should be accepted, the Defendants ignored Olson's

objection. When the Staff Master addressed it, they continue to gloss over it, arguing that "the Staff Master's recommendation to disregard the Deem Conceded Opposition due *merely* to a delay should be rejected." (Defs' Resp. to Staff Master's Recommend. 20, filed Dec. 15, 2022 (emphasis added) (hereinafter "Defs' Mot.").) Defendants point to the COVID-19 pandemic and its unique impacts "felt even more acutely by WAPA, a public utility . . . ." *Id.* Then they conclude that a "mere" 659-day "'delay should be excused under these circumstances . . . ." *Id.* This Court wholeheartedly disagrees.

¶23    Frankly, the Court is dumbstruck by the Defendants' argument, if it can be called that. because it reads more like a conclusion. Other than citing the pandemic as a panacea for their delay, the Defendants provide no other reason, especially none to explain why their counsel (as opposed to the Defendants' themselves) could not file a timely response to Olson's motion, or file an appropriate motion anytime between March 19, 2020 (the day after Olson filed her motion) and January 6, 2022 (the day the Defendants filed their response late) to ask that their delay be excused. Even after the Staff Master noted what the Defendants should have done, i.e., request leave of court and explain the delay, they instead stood firm in their mistaken belief that they can decide, unilaterally, when to file responses to motions and can assert good cause without any showing in support. They are mistaken. *See Greene v. V.I. Water & Power Auth.,* 67 V.I. 727, 740 (2017); *see also The Litwin Corp. v. Universal Oil Prods. Co.,* 69 V.I. 363, 377 (Super. Ct. 2018) ("'Excusable neglect and good cause must be shown, not concluded.'" (brackets and citation omitted)). Olson notes that "the Defendants gloss over the fact that that their opposition was filed 659 days late. That should end the matter." (Pl.'s Reply to Defs.' Resp. to the Staff Master's Recommend. 17, filed Jan. 12. 2023 (hereinafter "Pl.'s Reply").) It does.[*]

¶24    Next, Olson and the Defendants object to portions of the Recommendation on the motion to deem

---

[*] For the same reasons. the Court will also adopt the recommendation to disregard the Defendants' untimely response to Olson's motion to take judicial notice.

conceded. The Staff Master recommended that the Court grant it, but rather than deem portions of the answer admitted, grant the Defendants leave to file an amended answer. The Defendants object as far as the Staff Master found merit in Olson's motion, but otherwise agree with the recommendation to grant them leave to file an amended answer. Olson agrees with the recommendation to grant her motion, which (as the Staff Master noted) is more aptly called a motion to deem admitted not conceded. But she objects to giving the Defendants leave to file an amended answer, which she asserts is like giving them a pass or "a proverbial 'mulligan' and allowing them to replead runs counter to Rule 8(b)(6)'s mandate that the failure to deny results in the allegation being admitted." (Pl.'s Mot. 5.) Defendants counter that courts deem allegations in complaints admitted only "'when the matter is obviously one as to which a defendant has knowledge or information[,]'" (Defs.' Mot. 19 (quoting *Clay v. District of Columbia*, 831 F. Supp. 2d 36, 47 (D.D.C. 2011)), or as a "'sanction . . . where there is bad faith or evasive pleading.'" *Id.* (quoting *Clay*, 831 F. Supp. 2d at 47). Olson's reply is that the "Defendants are in a position clearly of their own making, they cannot now protest where they find themselves." (Pl.'s Mot. 5; *see also* Pl.'s Reply 17 (incorporating prior arguments).) She notes that the Defendants had possession of their own knowledge and "claiming that WAPA did not have information/data about its own financial statements is not only disingenuous, it runs dangerously close to violating Rule 11." (Pl.'s Reply 17.) Also, "[a]s to the direct quotations contained in the [First Amended Complaint], given that they are direct quotations, the Defendants should know if the direct quotations are accurate. If they are, they should be admitted . . . ." *Id.* And to the Defendants' point that they needed time to verify the accuracy of Olson's allegations, Olson concedes that is true, but counters that "the time to confirm the truth of the allegations is *before* the filing of an Answer (and not, which is apparently that WAPA is arguing, whenever WAPA gets around to it)." *Id.* at 18.

¶25     Having considered the parties' positions, and the Staff Master's analysis, the Court agrees with

Olson and will adopt the recommendation to grant the motion to deem conceded. The Defendants did not comply with Rule 8. For this same reason, however, the Court agrees with Olson that granting the Defendants leave to file an amended answer would be tantamount to excusing their failure. While the Court acknowledges the Staff Master's assessment of the various positions federal courts have taken, *see infra* note 4, the Virgin Islands rule outlines the consequences for failure to comply. "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." V.I. R. Civ. P. 8(b)(6). The rule is clear and, therefore, there is no need to look beyond it. Furthermore, the Defendants clearly knew or should have known whether quotes of their own public testimony and statements were accurate and denying the allegations for lack of knowledge was evasive at best.[8] For this reason, the Court must reject the Staff Master's recommendation to allow the Defendants to file an amended answer and instead direct that in their answer to the forthcoming second amended complaint, the Defendants must admit the corresponding allegations the Court deems them to

---

[8] The Court is sympathetic—to a very limited extent—with the Defendants' position insofar as Olson's First Amended Complaint contains quotations from public testimony, citations to newspaper articles, and references to actions taken by legislators, including the Virgin Islands Legislature and the Delegate from the Virgin Islands to the United States House of Representatives. For example, the First Amended Complaint states, in paragraph 64, that "A copy of Bill No. 33-0237 is attached hereto as Exhibit 4." (First Amend. Compl. ¶ 64.) This is not an averment in a pleading that a defendant can admit, deny, or deny for lack of knowledge. The Defendants did deny it, for lack of knowledge, which is nonsensical because the exhibit either was or was not attached to the complaint, i.e., the Defendants could have admitted that the exhibit was attached or denied that it was attached. But it also underscores a broader, and growing, concern with how complaints are drafted, particularly complaints in complex cases, that read like treatises or essays on a subject. Many of the allegations in Olson's complaint try to tell the "story" of WAPA's financial woes. *See, e.g., id.* ¶ 56 ("According to the St Thomas Source, WAPA was scammed out of more than $2 million."). But this is not the function of a pleading. Olson, for example, does not need to allege that WAPA was "scammed" out of money or reference an online newspaper as the source of the information because allegations in pleadings go to the elements of the claims or defenses asserted. It may have been sufficient, particularly in a notice pleading jurisdiction like the Virgin Islands, if Olson had alleged simply that she is a customer with a cash deposit, that WAPA is insolvent and in financial distress, that WAPA does not account for its customers' deposits and, thus, she asserts (on behalf of the class) that WAPA will not be able to honor customer deposits. Similarly, and only as an example, Olson could have also alleged generally that WAPA does not pay interest on deposits or discriminates against private businesses and residents in favor of government agencies by not terminating government agencies, departments, and offices for nonpayment. By including direct quotations, Olson, presumably, sought to simplify matters, but ultimately ended up complicating them. The Defendants' remedy may have been to ask for more time or to file a motion to strike the redundant or immaterial or impertinent matters from Olson's complaint. *See* V.I. R. Civ. P. 12(f). Instead, the Defendants chose to answer and by answering, they were subject to the requirements of Rule 11. As Olson notes, they could not reserve to themselves the right to verify the truth or falsity of her allegations whenever they got around to it, as their attempt to supplement the pleadings with Ms. Francis's declaration reveals. To the extent the decision to grant Olson's motion is viewed as a sanction, it is warranted here.

have admitted by not complying with Rule 8. Ordering the Defendants to file an amended answer would also be pointless at this juncture since they will have to answer the amendment to the complaint soon thereafter.

¶26   Before turning to the objections to the Recommendation on the motion for judgment on the pleadings, the Court first must address the legal standard because the Defendants had requested in their supplemental brief that the Court convert their motion for judgment on the pleadings into a motion for summary judgment. The Defendants attempted to eliminate the factual dispute the Court identified from the bench by attaching to their brief (which was, effectively, a surresponse) a declaration of WAPA's Customer Services Manager, Marlene Francis, who declared under penalty of perjury that Olson is a customer of WAPA with a cash deposit of $110.00. Olson objected to the Defendants' attempt to supplement the pleadings and to their request to convert the motion for judgment on the pleadings into a motion for summary judgment, and the Staff Master recommended that the Court deny the request. The Court agrees.

¶27   Even if the Court were inclined to convert the motion out of judicial economy concerns, notice must be given to the parties in advance, *see United Corp. v. Hamed*, 64 V.I. 297, 311 (2016), and all parties, including Olson, "must be given a reasonable opportunity to present all the material that is pertinent to the motion." V.I. R. Civ. P. 12(d). To give notice now would only delay this matter further. More importantly, discovery has not yet begun and Olson, likely, would respond with a request to defer summary judgment pending discovery. *Cf.* V.I. R. Civ. P. 56(d). Furthermore, the Court granted the parties leave to address the legal question discussed during the hearing: whether the factual dispute the Court identified precluded granting the relief the Defendants sought. The Defendants maintained that it did not because the gist of their motion was an attack on the legal sufficiency of Olson's complaint, and failure to state a claim for relief can be raised by motion for judgment on the pleadings. *See* V.I. R. Civ. P.

12(h)(2)(B). The more appropriate course—especially given the pending (and at that point still unopposed) motion to deem conceded—was to move for leave to file an amended answer and ask that the motion papers be construed to target the amended pleadings. Instead, the Defendants tried to supplement the factual record after the pleadings had closed, even though they knew that matters outside the pleadings cannot be considered on a motion for judgment on the pleadings. *Cf. Reynolds v. Rohn*, 70 V.I. 887, 896 (2019). "Conversion under Rule 12(d) is discretionary." *Stanley*, 2022 VI Super 77 at ¶ 37. The Court agrees with the Staff Master's recommendation that conversion is not proper and will overrule the Defendants' objection.

¶28 Olson next objects to the recommendation that the Defendants' motion be granted in part and portions of her counts dismissed that request a judgment declaring WAPA insolvent and declaring a state of emergency. The Court will briefly address the objection that the Virgin Islands Assignment for the Benefit of Creditors laws, *see* 5 V.I.C. §§ 1201-32, represents the codification of the "common law right to bring insolvency proceedings against a debtor." (Pl.'s Mot. 15.) Even if Olson is correct, that the Virgin Islands Assignment for the Benefit of Creditors laws "'provide a [territorial]-law alternative to the filing of a federal bankruptcy case[,]'" *id.* (quoting Carly Landon, *Making Assignments for the Benefit of Creditors as Easy as A-B-C*, 41 Fordham Urb. L.J. 1451, 1453 (2014)), Olson overlooks several important points. First, assignments for the benefit of creditors, or ABCs, "are not used to turn a business around, restructure, or financially rehabilitate the business. Rather, ABCs are purely used to wind the business down by selling or liquidating it." Landon, *Making Assignments for the Benefit of Creditors as Easy as A-B-C*, 41 Fordham Urb. L.J. at 1456 (footnote omitted). Second, "ABCs will generally not be enforced when they conflict with the public policy of the state [or territory] in which the assignment is sought." *Id.* at 1461. Third, and most importantly, ABCs are brought on a voluntary, not involuntary basis. *See* 5 V.I.C. § 1201 ("No *voluntary* assignment for the benefit of creditors hereafter made shall be valid unless the

same is made in conformity to the terms of this chapter." (emphasis added)); *see also* Landon, *Making Assignments for the Benefit of Creditors as Easy as A-B-C*, 41 Fordham Urb. L.J. at 1459 n.53 ("in ABCs the 'debtor *voluntarily* assigns its assets to a third party as trustee for the purpose of liquidating the assets to satisfy, in full or in part, creditors' claims against the debtor[.]'" (emphasis added) (quoting *Moecker v. Antoine*, 845 So. 2d 904, 910 (Fla. Dist. Ct. App. 2003)). As the authority Olson, herself, relies on explains:

> To commence the ABC process, a distressed corporation will generally need to obtain both board of director authorization and shareholder approval. Although ABCs are a state [or territorial] law procedure, many of their requirements, such as board and shareholder approval, are rooted in state [and territorial] corporate law rather than in ABC statutes or ABC common law. *Id.* at 1458 (footnotes and quotation marks omitted).

Putting aside public policy concerns and statutory prohibitions on WAPA, a public utility, liquidating its assets, much of which the Staff Master adeptly discussed, *infra*, WAPA did not commence this action, Olson did, and Olson cannot force WAPA involuntarily to make an assignment to benefit the class of cash deposit creditors. Again, Olson's own authority explains that

> [a]n ABC stops creditors from pursuing the debtor through collection lawsuits. The practical effect of many of the . . . laws surrounding ABCs is that these creditor actions are rendered ineffective. This does not mean, however, that creditors are left completely without a remedy. Creditors can always file an *involuntary bankruptcy petition* without proof of the debtor's cash flow insolvency. Proof of the ABC is itself grounds for involuntary bankruptcy relief. *Id.* at 1461 (emphasis added) (footnotes omitted).

Olson cannot use the Virgin Islands Assignment for the Benefit of Creditors laws to involuntarily declare WAPA insolvent.

¶29    Olson is correct in one respect, however. The Staff Master failed to recognize that an estate is created in assignment for the benefit of creditors proceedings. While the statutes do not expressly declare that an estate is created upon execution and delivery of the assignment with the clerk of court, that is implied by how the term estate is used throughout the chapter. *See, e.g.*, 5 V.I.C. § 1206 (directing that clerk of court take possession of assigned estate); *id.* § 1211 (referring to inventory and appraisement of

assigned estate); *id.* § 1216 (providing for the sale of the assigned estate). The Staff Master noted that declaratory relief is available to any person interested as a creditor in the administration of the estate of an insolvent but then concluded, *infra*, that "estates are only established to manage the affairs of insolvent persons and corporations in bankruptcy proceedings." That is incorrect. But the underlying conclusion is correct. No estate was opened here because WAPA did not commence an ABC action. Assuming, *arguendo* that WAPA could commence an assignment for the benefit of creditors proceeding, and if there were a dispute among the creditors about Olson's (and the class's) status, that dispute could be addressed through a declaratory judgment. The Court agrees with the Staff Master's recommendation that, even if it could declare WAPA insolvent, doing so would not terminate the uncertainty, so the Court will exercise its discretion and enter judgment of dismissal on this count.

¶30     The next objection Olson raises is to the recommendation that the Court *sua sponte* grant the parties leave to amend their pleadings. As noted, *supra*, the Court will reject the recommendation to grant the Defendants' leave to file an amended answer. Olson also objects to having to file an amended complaint. She first requests that the Court modify the recommendation to allow—in lieu of filing a second amended complaint—"amendment by interlineation." (Pl.'s Mot. 30.) Olson does not explain how amendment by interlineation operates, nor does she cite any authority in support. *Contra* V.I. R. Civ. P 6-1(a)(2). This Court also has not uncovered any authority addressing amendment by interlineation. The term "interlineation" means to add "new language in between the lines of a pre-existing legal document, usually to clarify a provision, or address an afterthought or omission. The insertion is traditionally initialed by all parties, or alternatively the document is retyped and then signed." Interlineation, Legal Information Institute, https://www.law.cornell.edu/wex/interlineation (last visited Apr. 23, 2024). There simply is no authority in Virgin Islands law or rules of procedure for what Olson proposes, and the effect—of taking a copy of the First Amended Complaint, adding new language and/or striking existing language and then

retyping and resigning it (and refiling it)—would be the functional equivalent of her filing an amended complaint. Olson's objection and request to interlineate her complaint, rather than amend it, is denied.

*Remaining Objections*

¶31     Having considered all other objections the parties raised, they are overruled. Briefly, the Court notes that it agrees with the Staff Master's analysis of the constitutionality of the statutes Olson challenged and, thus, the Defendants' motion, joined by the Government, to adopt the recommendation will be granted. The Court is also not convinced by Olson's arguments in favor of rejecting the Staff Master's recommendation to deny her motion to take judicial notice of thousands of pages of documents filed in an administrative agency proceeding. Olson objects, claiming she needs the documents judicially noticed to estop the Defendants from denying their contents or their existence. It seems instead, however, that Olson is trying to foreclose issues that may arise in discovery or during depositions by getting the Court's imprimatur in advance. Taking judicial notice is not necessary at this juncture, particularly because discovery has not commenced yet.

¶32     The Court also notes briefly that it agrees with the Staff Master that citations to legal authority are superfluous in pleadings since pleadings should contain a short and plain statement of the pleader's right to relief. Olson may have a right to relief on Count II, which alleges WAPA's billing practices are discriminatory, but not under the Virgin Islands Bill of Rights, which prohibits the enactment of laws that deny equal protection or deprive people of life, liberty, or property without due process. *See* 48 U.S.C. § 1561 ("No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws."). As the Staff Master explained, the billing practices of a semi-autonomous public corporation cannot be considered the enactment of a law. Olson objects to removing the references to the Virgin Islands Bill of Rights from her complaint, claiming it might foreclose further appellate review. The Court disagrees. The

issue was raised, addressed, and is preserved for appeal. The Court does disagree with the Staff Master on one point, however, giving Olson the option to stand on her complaint. Removing references to legal authority would allow Count II to survive the Defendants' motion, as the Staff Master noted that Virgin Islands law, not federal law, might prohibit the discriminatory practices Olson complains of. But the Virgin Islands Bill of Rights does not apply here. Since legal authorities do not have to be cited in pleadings, removing them will simplify the issues. For similar reasons, the Defendants' objection to denying their motion for judgment of dismissal on Count II is also overruled.

### *Defendants' Motion to Dismiss Kupfer / Substitution of Current WAPA CEO*

¶33 Finally, the Staff Master acknowledged that Kupfer is no longer the CEO of WAPA and then noted that substitution may be required under Rule 25(d) of the Virgin Islands Rules of Civil Procedure. The Staff Master made this observation in recommending that the parties be given leave to file amended pleadings. The Defendants, in their response, moved, not to adopt the recommendation. but to dismiss Kupfer outright, but without naming his successor or offering to substitute the current CEO. Olson, in her reply to the Defendants' response, merely countered that "[t]he current CEO of WAPA should be substituted in for Kupfer . . . ." (Pl.'s Reply 18.)

¶34 WAPA is a public corporation. *See* 30 V.I.C. § 103(a). Whether its officers should be considered public officers for purposes of Rule 25(d) of the Virgin Islands Rules of Civil Procedure is unclear, and neither the Staff Master nor the parties addressed the issue. The Court takes judicial notice that Kupfer is no longer the CEO. Olson did not specify in her complaint whether Kupfer was being sued in his official capacity or in his personal capacity. On the whole, her allegations concern WAPA's solvency and its billing practices and she seeks declaratory relief, not damages. She did not allege any personal action taken by Kupfer or done in dereliction of his official duties, so the Court sees no harm in granting the Defendants' request to dismiss Kupfer and granting Olson's request to name the current CEO in his place

in her forthcoming second amended complaint.

## IV.    CONCLUSION

¶35    Having considered *de novo* the Recommendation in light of the parties' responses, the Court agrees with the Recommendation and will adopt it in full, except in two respects. The recommendation to grant the Defendants leave to file an amended answer will be rejected because ordering the Defendants to file an amended answer at this juncture would be pointless as they will have to file an answer to the forthcoming amendment to the complaint soon thereafter. Instead, to ensure that the Defendants do not evade the consequences of failing to comply with Rule 8, the Court will direct them to admit in their forthcoming answer the corresponding paragraphs of the forthcoming complaint that mirror the paragraphs they are deemed to have admitted by not complying with the rule. The Court must also reject the Staff Master's recommendation to allow Olson to stand on her complaint. To let her stand on her complaint seeking relief under the Virgin Islands Bill of Rights would require dismissal of Count II, which is not what Olson seeks. Next, even though the Court disagrees with Olson and the Staff Master on the status of the Defendants' motion for judgment on the pleadings, out of an abundance of caution the Court will vacate the bench ruling denying it, which would have the effect of reinstating the motion for judgment on the pleadings. Lastly, the Court will treat the Government's motion as a notice of joinder, and will allow for the dismissal of Kupfer and the substitution of his successor. Appropriate orders follow.

**DONE and SO ORDERED** this ___24th___ day of April, 2024,

_____
**HAROLD W.L. WILLOCKS**
Administrative Judge of the Superior Court

**ATTEST**:
Tamara Charles
Clerk of the Court
By: _____
Court Clerk
Dated: ___4/24/2024___

# RECOMMENDATION [*]

**Gasper,** *Staff Master.*

This Recommendation is submitted in furtherance of the undersigned's duties and responsibility to "[m]ake or recommend findings of facts and conclusions of law on dispositive motions," to "[m]ake formal . . . recommendations . . . regarding any matter pertinent to the proceedings[,]" and to "[c]onduct legal analysis of parties' motions or other submissions and make recommended findings of facts and conclusions of law . . . ." *In re: Authorization for the Creation & Appointment of Staff Master for the Complex Litig. Div. of the Super. Ct. of the V.I.*, Admin Order No. 2021-0012, 2021 V.I. Supreme LEXIS 14, *3-4 (V.I. Aug. 12, 2021). Specifically, this recommends addresses the following motions: (1) Motion to Take Judicial Notice filed by Plaintiff on March 16, 2020; (2) Motion to Deem Conceded filed by Plaintiff Jody Olson (hereinafter "Plaintiff" or "Olson") on March 18, 2020; (3) Joint Motion for Judgment on the Pleadings filed by the Virgin Islands Water & Power Authority (hereinafter "WAPA") and Lawrence J. Kupfer (hereinafter "Kupfer") (collectively "Defendants") on December 29, 2020; and (4) Motion to Declare / Hold Sections 111(a) & 120 of Title 30 of the Virgin Islands Code Unconstitutional filed by Plaintiff on October 6, 2021. Having considered the parties' arguments, the undersigned recommends for reasons explained further below that the Court grant Plaintiff's motion to deem conceded, deny Plaintiff's motion to take judicial notice without prejudice, grant in part and deny in part the Defendants' joint motion for judgment on the pleadings, and deny Plaintiff's motion to declare title 30, sections 111(a) and 120 unconstitutional. Additionally, though not raised by the parties, the undersigned also recommends that the Court *sua sponte* grant the parties leave to amend their respective pleadings.

## I.    Background

The parties initially appeared before the Court (Willocks P.J.) on July 19, 2021 for a status

---

[*] Except for correcting minor scrivener's errors, the Recommendation, incorporated herein, is identical to that issued on October 18, 2022.

conference. Counsel for Plaintiff urged the Court to rule on her May 7, 2020 motion to certify the case as a class action. Counsel for the Defendants opposed, arguing that the Court should instead decide the Defendants' motion for judgment on the pleadings and motion to stay discovery first. The Court initially expressed concern that the parties had not engaged in discovery given the requirements of Rule 26(d)(4) of the Virgin Islands Rules of Civil Procedure, which provides that "[t]he filing of any motion – including potentially dispositive motions such as a motion to dismiss or a motion for summary judgment – shall not stay discovery in the action unless the judge so orders." From the bench, the Court granted Plaintiff's motion to certify a class and appointed Plaintiff's counsel, Joseph A. DiRuzzo, III, Esq., class counsel. The Court also granted the Defendants' motion to stay discovery but only until the parties could meet and confer and submit a stipulated scheduling order. The parties filed their proposed order on August 18, 2021, which the Court approved on September 10, 2021. The Court scheduled oral argument for September 7, 2021.

At the September 7, 2021 hearing, the Court denied the Defendants' motion for judgment on the pleadings from the bench. (*See* Hr'g Tr. 5:4-5 (Sept. 7, 2021) ("THE COURT: Okay. The motion for judgment on the pleadings is going to be denied.").) The basis for the ruling was a factual dispute: the Defendants, in their Answer, had denied that Olson was a customer of WAPA. *See id.* at 5:5-9 ("The problem we have is that the defense, in its answer, did not concede that the plaintiff Olson was a customer of WAPA or even that they had made a deposit. A judgment on the pleadings requires that there's no factual issues."). Counsel for the Defendants objected and asked to be heard. After hearing the objections, the Court granted the Defendants leave to address whether the judgment on the pleadings motion would be proper, notwithstanding the factual dispute. Plaintiff was also given leave to respond. *See id.* at 12:8-20 ("I'll give you the opportunity, if you wish to brief it, I'll look at it. But, um, you know, absent you showing me citations and so forth to change my mind, that's my ruling. Now, if you wish to take leave of

the Court to show this Court where it's wrong, I have no problem -- you know, I love learning, so if you wish to take leave and show me where I'm wrong on my position, I'll give you relief. How much time do you want? MR. WELLING: Um, 30 days, Your Honor? THE COURT: Okay. That's fine. Plaintiff will have 15 days after that to respond. Simply on that issue. Okay?" (line breaks omitted)).

The Defendants filed their supplemental brief, which the undersigned refers to hereinafter as a surresponse, on October 7, 2021. Plaintiff filed her reply, which the undersigned refers to as a surreply, on October 22, 2021. The Defendants attached to their surresponse an affidavit of Marlene Francis, WAPA's Customer Services Manager, in which she confirmed that Olson is a customer with a cash deposit on file of $111.00.

During the September 7, 2021 hearing, the Court had also raised a concern about its authority to grant relief to the class. Section 111(a) of title 30 of the Virgin Islands Code provides that "[a]ll property including funds of the Authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon its property . . . ." Likewise, section 120 of title 30 of the Virgin Islands Code provides that "[a]n injunction shall not be granted to prevent the application of this chapter or any part thereof." In light of these limitations, the Court questioned whether it could award any relief to the class. (*See* Hr'g Tr. 16:11-17 (Sept. 7, 2021) ("[E]verything you say is correct. Let's say that. Everything you say is correct. I agree with you 100 percent. What position can the Court do? What can this Court -- subject to the statutory limitations, what is it that this Court can do to WAPA? What can they order WAPA to do that would not be in violation of the statute?").)

After further discussion, the Court began to refer to its concerns in terms of jurisdiction. *See id.* at 19:25-20-3-4 ("It's almost like a jurisdictional issue. . . . Does the Court have jurisdiction to provide you with the remedy that you seek?"). The Court then gave Plaintiff leave to address its concerns, which Olson

did by filing, on October 6, 2021, a motion to declare / hold title 30, sections 111(a) and 120 of the Virgin Islands Code unconstitutional. The Defendants responded in opposition on October 26, 2021, to which Olson replied on November 9, 2021. Pursuant to Rule 5.1 of the Virgin Islands Rules of Civil Procedure, the Government of the Virgin Islands was notified of Olson's constitutional challenge and filed a response on December 13, 2021, to which Olson replied on January 6, 2022.

Having given the parties leave to file additional briefing, the Court (Willocks, P.J.) adjourned argument to December 9, 2021. Because of the jurisdictional concerns, the Court also extended the stay on discovery. Discovery still remains stayed. Before the December hearing date, counsel for Plaintiff filed a motion on November 29, 2021 for a continuance because of a conflict with oral argument scheduled before the United States Court of Appeals for the Third Circuit on the same day. As the undersigned had been appointed Staff Master by that point, the undersigned granted Plaintiff's request, moved the December 9, 2021 hearing to January 7, 2022, and directed counsel to come prepared to argue all motions listed as pending in their July 2, 2021 joint report.

Plaintiff and the Defendants appeared through counsel at the January 7, 2022 hearing. Non-Party Vitol Virgin Islands Corporation (hereinafter "Vitol") and Intervenor Government of the Virgin Islands also appeared through counsel. The undersigned heard argument on Plaintiff's motion to declare unconstitutional and briefly addressed Vitol's motion to quash. At the end of the hearing, the undersigned directed Olson and Vitol to meet and confer in an attempt to resolve their issues, which they later did, filing a notice on March 25, 2022 that the dispute had been resolved and that Olson and Vitol would withdraw their motions to compel and to quash, respectively. Due to time constraints, the undersigned was unable to hear argument on all pending motions on January 7, 2022. Further, two motions—the motion to take judicial notice and the motion to deem conceded—technically were not fully briefed until after the hearing, because the Defendants waited two years to file their oppositions.

On January 12, 2022, the undersigned issued an order scheduling another hearing for April 1, 2022, later continued to June 6, 2022 to accommodate counsel for Defendants. The Order also directed counsel to file a notice by January 28, 2022, listing the motions, if any, they wanted to argue. Any motion not listed would be addressed by order or recommendation on the papers. In their joint notice, counsel listed two motions for argument: the motion for judgment on the pleadings and the motion to declare sections 111(a) and 120 unconstitutional.

The undersigned heard argument on both motions. At the conclusion of the hearing, the undersigned inquired if counsel wanted to request a transcript. If they did, the undersigned would defer issuing a recommendation until the transcript was prepared. If the parties waited to request the transcript until after the recommendation had issued, some of the time allotted by Rule 53(f)(2) of the Virgin Islands Rules of Civil Procedure to object or to move to adopt or modify a master's recommendation would be reduced while awaiting the transcript. Counsel for Plaintiff indicated that he would be requesting the transcript and proposed that the recommendation "be [issued] a couple weeks after the transcript is prepared . . . ." (Hr'g Tr. 108:15 (June 6, 2022).) Plaintiff then filed a notice on June 15, 2022 that she received the transcript on June 14, 2022.[1] Nothing further has occurred to date.

## II.     Motions

### A. Motion to Deem Conceded

The undersigned recommends that the Court grant Plaintiff's motion to deem conceded.[2] Plaintiff moves to deem paragraphs 24, 27, 28, 29, 36, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 52, 55, 56,

---

[1] Administrative Order No. 2021-0012 directs that the Staff Master shall "file all orders, recommendations and reports promptly with the clerk's office[.]" *In re: Authorization for the Creation & Appointment of Staff Master*, 2021 V.I. Supreme LEXIS 14 at *4. The undersigned acknowledges that this Recommendation is not as prompt as it could have been and apologies to the Court and counsel for the delay. At the time when the parties discussed timing of the recommendation with the undersigned, the undersigned neglected to consider the other motions—for judicial notice and to deem conceded—that were to be addressed on the papers.

[2] It may be more accurate to say deem admitted.

and 57 of her First Amended Complaint admitted. Her motion rests on Rule 8(b) of the Virgin Islands Rules of Civil Procedure and persuasive authority from federal courts construing the federal rule. Plaintiff points out that Rule 8(b) provides three options when responding to a pleading: admit, deny, or deny for lack of knowledge or information. (*See* Pl.'s Mot. to Deem Conceded 2, filed Mar. 18, 2020 ("Rule 8(b) permits a party only three ways to respond to an allegation: (1) admit it (2) deny it or (3) state that the party lacks knowledge or information sufficient to form a belief about the truth of the allegation.'" (quoting *Kegerise v. Susquehanna Twp. Sch. Dist.*, 321 F.R.D. 121, 124 (M.D. Pa. 2016)).) *See also* V.I. R. Civ. P. 8(b)(5) ("A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement *has the effect of a denial.*" (emphasis added)).

Plaintiff points to multiple places in the Defendants' Answer where, according to her, the Defendants violated Rule 8(b) by not admitting the corresponding paragraphs of her First Amended Complaint. For example, she points to the Defendants having denied paragraph 24 of the First Amended Complaint in which she alleged that she is a customer of WAPA with a cash deposit on file. "How do the Defendants not know that the Plaintiff is a WAPA customer, and shouldn't they know if she has a deposit[,]" Olson asks. (Deem Conceded Mot. 4.) Another example – Olson points to paragraphs 38 through 42 of the First Amended Complaint, which quote portions of the October 1, 2019 testimony Kupfer gave before the 33rd Legislature, Committee of the Whole. Olson attached a copy of Kupfer's statement to her Complaint as Exhibit 2. Paragraphs 38 through 42 quote or reference portions of Kupfer's testimony. Rather than admit, deny, or deny for lack of knowledge, the Defendants' responses to all five paragraphs are the same: the testimony "speaks for itself and [they] deny the allegations asserted in Paragraph No. 38 of the Complaint to the contrary." (Ans. ¶ 38; *see also id.* ¶¶ 39-42.)

Plaintiff further points to paragraphs 56 and 57, which allege that WAPA was scammed out of $2 million due to phishing emails and lax cybersecurity training for employees. Specifically, Paragraph 56

cites to a June 11, 2019 article from the St. Thomas Source, available at https://stthomassource.com/content/2019/06/11/wapa-missing-2-18-million-was-stolen-in-email-scam/, which references a statement WAPA issued the prior weekend. In their Answer, the Defendants claim that they lack sufficient information to admit or deny this allegation. Olson cites this response as "demonstrat[ing] a wholesale failure to comply with Rule 8 in good faith . . . [and] an improper attempt to obscure the Defendants' position." (Deem Conceded Mot. 7.)

One final example is paragraph 36. In paragraph 36, Olson alleged that "WAPA has a $24 million judgment entered against i[t] in "federal court due to Trafigura (a former fuel supplier)." (First Am. Compl. ¶ 36.) In their Answer, the Defendants "den[ied] the allegations asserted in Paragraph No. 26 [sic] of the Complaint." (Answer ¶ 36.) Olson counters that WAPA "entered into a consent judgment on May 10, 2017[,]" (Deem Conceded Mot. 9), and attached as exhibit 2 to her motion a copy of the May 10, 2017 judgment signed by Judge Curtis V. Gomez in *Trafigura Trading, LLC v. Virgin Islands Water & Power Authority*, Case No. 3:16-cv-00028.[3] Since WAPA consented to entry of judgment against it, for WAPA to respond to Olson's complaint with anything other than an admission borders on a violation of Rule 11, Olson argues.

These examples are just a few of the twenty-two paragraphs in the Defendants' Answer that Olson wants the Court to deem admitted. In support of her motion, however, Olson did not cite any Virgin Islands precedent, binding or persuasive. She did cite several decisions of federal courts that support the relief she seeks. (*See generally* Deem Conceded Mot. 2-3 (citing *Kegerise v. Susquehanna Twp. Sch. Dist.*, 321 F.R.D. 121, 124 (M.D. Pa. 2016); *Graham Eng'g Corp. v. Adair*, No. 1:16-CV-2521, 2018 U.S. Dist.

---

[3] Even though Olson provided a copy, the Court would have discretion to take judicial notice of the judgment of the District Court of the Virgin Islands. *Cf. Gov't of the V.I. v. United Indus., Svc., Transp., Prof. & Gov't Workers of N. Am.*, 64 V.I. 312, 319 n.2 (2016) ("Although the parties did not include the District Court record in their joint appendix, this Court may take judicial notice of its existence and it.").

LEXIS 67430 (M.D. Pa. Apr. 23, 2018); *United States for the use of Automatic Sprinkler Corp. v. Merritt-Chapman & Scott Corp.*, 305 F.2d 121, 123 (3d Cir. 1962); *SCC Sinclair Cattle Co. v. Ward*, No. 1:14-CV-1144, 2015 U.S. Dist. LEXIS 140746 (M.D. Pa. Oct. 16, 2015); *Zion v. Nassan*, Civil Action No. 09-383, 2011 U.S. Dist. LEXIS 95303 (W.D. Pa. Aug. 25, 2011)).)[4] However, before addressing the merits, the undersigned must first address the Defendants' two-year delay in responding to Olson's motion.

### i. Defendants' Response Should be Disregarded

The Defendants did not respond to Plaintiff's motion for 659 days. Plaintiff filed her motion on March 18, 2020. Without requesting leave of court or explaining the delay, the Defendants filed their response in opposition on January 6, 2022. Pursuant to Standing Order No. 4, parties to complex cases "need only alert the Court to [the] alleged violation or impropriety (timeliness, new argument(s) raised, failure to adhere to formatting requirements, etc.) in their respective papers or by a separately-filed notice and the Court will then take that information into consideration." Standing Order No. 4, ¶ 7, *available at In re: Complex Litig. Cases Pending in the Superior Court of the V.I.*, No. SX-19-MC-035, 2019 V.I. LEXIS 28, *9 (V.I. Super. Ct. Mar. 5, 2019). Olson alerted the Court to the Defendants' untimely response in her reply. (*See* Pl.'s Reply re: Mot. to Deem Conceded 2, filed Jan. 10, 2022 ("Thus, the 659-day late

---

[4] Rule 11 of the Virgin Islands Rules of Civil Procedure provides that, "[b]y presenting to the court a . . . written motion . . . an attorney or self-represented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the applicable Virgin Islands law has been cited, including authority for and against the positions being advocated by the party." V.I. R. Civ. P. 11(d). Although Rule 11(d) does not mandate that an attorney or self-represented party alert the Court to the absence of Virgin Islands law, the undersigned believes that this requirement is reasonably implied. The Court could also infer—from an attorney or self-represented party's failure to cite Virgin Islands law (including case law)—that there Is no local law on point. A problem arises, however, because Rule 11(d) does not carry a similar requirement when citing non-Virgin Islands law, i.e., that authorities for and against the position being advocated also be cited. Considering that there are 50 States, 6 Territories (including the District of Columbia), 94 federal district courts, and 13 federal appellate courts – there is a strong likelihood of divergent approaches. Here, for example, the question is whether courts can (or should even if they can) convert a response in an answer to a denial when the rules governing pleadings are not complied with. Or should a court simply grant the party leave to amend its pleading instead, reserving as a last resort the authority to deem an allegation admitted. The undersigned's review of the case law shows a disagreement among the federal courts over how and when courts exercise this authority, and absent a requirement that attorneys or self-represented parties cite authority both for and against their own positions, the court would be left to assume, mistakenly perhaps, that the persuasive authority cited by the movant represents the majority (or universal) approach, which could be error if the movant only cited authority that supported her position rather than present the court with both or all approaches and then argue for the approach that she believed in.

opposition must be rejected/disregarded and the motion granted in full.").) Thus, before considering the Defendants' response, the undersigned must address its untimeliness. For the following reasons, the undersigned recommends that the Court disregard the Defendants' response and Plaintiff's reply.

Rule 6 of the Virgin Islands Rules of Civil Procedure provides that "[u]nless otherwise ordered by the court, a party shall file a response within 14 days after service upon the party of any motion . . . ." V.I. R. Civ. P. 6(f)(1). The Court (Molloy, J.) provided otherwise by issuing Standing Order No. 4, which applies to all cases in the Complex Litigation Division. Section 5 of Standing Order No. 4 extends "the deadline for all responses . . . [and] for all replies . . . to twenty-eight (28) days from the date the [motion or] response is served and filed, provided that the parties meet and confer as directed, and . . . that a different deadline is not specified by court order." *In re Complex Litig. Cases Pending in the Superior Court of the V.I.*, 2019 V.I. LEXIS 28 at *7-8. Thus, unless the Court provides otherwise, the deadline for all responses and replies in complex cases is 28 days, approximately seven days more than the 14-days provided by Rule 6-1(f)(1), as calculated per Rule 6. *See* V.I. R. Civ. P. 6(1)(B) (a 14-day deadline, which is less than 15 days, is calculated by counting only business days) ("[W]hen the period is 15 days or more, count every day, including intermediate Saturdays, Sundays, and legal holidays; when the period is 14 days or less, do not count intermediate Saturdays, Sundays, and legal holidays[.]"). Therefore, the Defendants had twenty-eight days, or until April 15, 2020, to file their response.

However, two days after Plaintiff filed her motion, the Supreme Court of the Virgin Islands, on March 20, 2020, issued Administrative Order No. 2020-0004 in response to the COVID-19 pandemic. Administrative Order No. 2020-0004 extended "[a]ll deadlines in all pending cases which have not yet passed . . . by fourteen (14) days or to April 27, 2020, whichever is longer[.]" *In re: Suspension of Non-Essential Jud. Branch Servs. in Response to Coronavirus Disease 2019 (COVID-19), & Adoption of Interim Procs. in Matters Before the S. Ct. of the V.I. and the Super. Ct. of the V.I.*, Admin Order No.

2020-0004, 2020 V.I. Supreme LEXIS 5, *8-9 (V.I. Mar. 20, 2020). A second order, Administrative Order No. 2020-0008, further extended "[a]ll deadlines in all pending cases which ha[d] not yet passed . . . by fourteen (14) days or to June 1, 2020, whichever is longer[.]" *In re: Suspension of Non-Essential Jud. Branch Servs. in Response to Coronavirus Disease 2019 (COVID-19), & Adoption of Interim Procs. in Matters Before the S. Ct. of the V.I. and the Super. Ct. of the V.I.*, Admin Order No. 2020-0008, 2020 V.I. Supreme LEXIS 9, *6 (V.I. Apr. 23, 2020). A third order, Administrative Order No. 2020-0010, granted a final extension, declaring that "[a]ll documents that were due to be filed in . . . the Superior Court . . . between March 23, 2020, and June 14, 2020, shall be due on June 15, 2020." *In re: Transition to Resumption of Certain Jud. Branch Operations*, Admin Order. No. 2020-0010, 2020 V.I. Supreme LEXIS 14, *8 (V.I. May 28, 2020). Thus, the deadline for the Defendants to respond to Olson's Motion to Deem Conceded, originally April 15, 2020, was extended by the COVID-19 pandemic-related administrative orders to June 15, 2020. Defendants did not file their response until January 6, 2022.

The rules governing practice and procedure in the Superior Court are silent on whether courts should overlook untimely motion papers if an opposing party does not object. One could argue that the deadline for filing responses and replies are claims-processing rules which courts should not raise *sua sponte. See Gov's of the V.I. v. Crooke*, 54 V.I. 237, 253-54 (2010) ("It is well established that time limits set exclusively by court rules are mere claims-processing rules which do not affect a court's subject matter jurisdiction even if they may result in dismissal if violated."). But here, Olson did object. And more importantly, the Supreme Court has held that litigants cannot "dictate that the Superior Court resolve motions in a piecemeal manner, prolonging litigation." *Greene v. V.I. Water & Power Auth.*, 67 V.I. 727, 740 (2017).

The Defendants did not move for an extension of time or for leave to file their response out of time. Instead, they adhered to their own timing, waiting to file their response until after the undersigned,

on December 1, 2021, granted Plaintiff's motion to continue the December hearing and directed that the undersigned would hear argument on all pending motions. (*See* Defs' Opp'n to Pl.'s Mot. to Deem Conceded 2, filed Jan. 6, 2022 ("Defendants submit this opposition pursuant to the Court's December 1, 2021 Order directing that *all* pending motions will be argued at the January 7, 2022 hearing.") (hereinafter "Deem Conceded Opp'n").) Clearly, the Defendants adhered to their own timing, waiting until the day before oral argument to file their response. That delay had the effect of rendering the motion to deem conceded not fully briefed and caused further delay. (*See* Order 1 n.1, entered Jan. 12, 2022 ("Two motions were. technically not fully briefed until after the January 7, 2022 hearing, namely Plaintiff's motion to take judicial notice and motion to deem conceded.").) For these reasons, the undersigned recommends that the Court disregard the Defendants' response and, by extension, all arguments in Plaintiff's reply except her objection to the untimeliness of the Defendants' response.

### ii. Merits of the Motion

However, even if the Court disagrees and considers the Defendants' response, the explanations the Defendants offer actually support the relief Plaintiff is seeking. For example, the Defendants assert that when "information necessary to confirm the truth or falsity of certain allegations is not readily available. possessed by third parties or otherwise difficult to ascertain, courts routinely uphold [d]efendants' assertion of a lack of sufficient knowledge." (Deem Conceded Opp'n 4.) The Defendants also contend that they—like defendants in other cases—also "did not 'obviously' readily possess information relating to WAPA's financial statements, liabilities and assets, payments by customers, rating agency reports, third-party news reports and various other statements made by third parties, legislatures or WAPA employees." *Id.* at 3. It is a stretch to accept these.

Take as examples Olson alleging that she is a ratepayer and referencing the testimony of Kupfer before the 33rd Legislature. Olson made both allegations in her initial complaint. (*See* Compl. ¶ 15, filed

Oct. 30, 2019 ("Plaintiff is a customer of WAPA and, like all WAPA customers as a condition precedent to receiving service, made a customer deposit with WAPA."); *see also id.* ¶¶ 28-33 (referencing Kupfer's testimony before the 33rd Legislature).) The Defendants did not file their Answer until February 28, 2020, roughly a month after the First Amended Complaint was filed and four months after the initial Complaint. They had ample time to determine whether the copy of Kupfer's testimony that Olson attached to her pleadings was accurate. "Responses that documents speak for themselves and that allegations are legal conclusions do not comply with rule 8(b)'s requirements." *Kassa v. Plans Admin. Comm. of Citigroup, Inc.*, No. CIV 10-0933 JB/ACT, 2011 U.S. Dist. LEXIS 165427, *9 (D.N.M. Apr. 27, 2011). They also had ample time to determine whether Olson was a customer. Instead, they denied the allegation, which only frustrated their motion for judgment on the pleadings and caused delay. While counsel for the Defendants may not have possessed information concerning WAPA's financial statements, liabilities, assets, customers, and so forth, their clients did—or should have.

Another example further illustrates Olson's objections – the allegation that the District Court entered a judgment against WAPA. WAPA and Kupfer know whether this allegation is true, and their attorneys had a duty to meet with them before filing an answer on their behalf. *Cf.* V.I. R. Civ. P. 11(b) (noting that pleadings must be based on an inquiry reasonable under the circumstances). "[A] party may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An averment will be deemed admitted when the matter is obviously one as to which defendant has knowledge or information. A party may also be held to the duty to exert reasonable effort to obtain knowledge of a fact." *Kegerise*, 321 F.R.D. at 125 (internal quotation marks and citations omitted).

Lastly, the Defendants essentially concede that their Answer, at least in part, does not comport with Rule 8(b) because they state in a footnote that they "may seek leave to amend their Answer" after discovery. (Deem Conceded Opp'n 4 n.4.) Like many of our rules, Rule 8 of the Virgin Islands Rules of

Civil Procedure is patterned after Rule 8 of the Federal Rules of Civil Procedure. *Cf. Powell v. FAM Protective Servs., Inc.*, 72 V.I. 1029, 1038 (2020) ("Both Rule 8(c) and Rule 15 of the Virgin Islands Rules of Civil Procedure are substantively identical in all relevant respects to their counterparts in the Federal Rules."). Accordingly, "the body of case law construing th[e federal] rule may properly be considered in construing [the local rule]." *Slack v. Slack*, 69 V.I. 567, 573 (2018). There is one important difference, however, between Federal Rule 8(b) and Virgin Islands Rule 8(b) – the omission of subsection (b)(3). *Compare* Fed. R. Civ. P. 8(b)(3) ("A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted."), *with* V.I. R. Civ. P. 8(b)(3) ("[Reserved.]"). When filing an answer to a complaint, a crossclaim, or a third-party complaint, the responding party cannot assert a general denial. Instead, in Virgin Islands practice requires that the responding party admit or deny each and every allegation, even if the denial is for lack of information. This difference supports Olson's requests because the Defendants were obligated to conduct a reasonable inquiry beforehand. Defendants did not comply with Rule 8(b). So, even if the Defendants' response is not stricken, the arguments they offer in opposition actually underscore the relief Olson seeks in her motion.

As noted in the discussion in footnote 4, courts in other jurisdictions are divided when answers do not comply with Rule 8(b). Some courts simply deem the offending allegation admitted as Rule 8(b)(6) directs, while others direct the defendant to file an amended answer to correct the offending responses. *Compare Kegerise*, 321 F.R.D. at 125 ("Based on the foregoing, we will issue an order requiring Defendants to file an amended answer with responses that conform to the pleading requirements of Rule 8(b)."), *with Fletcher v. Hoeppner Wagner & Evans, LLP*, No. 2:14-CV-231-RL-PRC, 2015 U.S. Dist. LEXIS 153057, at *21 (N.D. Ind. Nov. 12, 2015) ("The Court **DEEMS ADMITTED** the allegations in

Paragraphs 4 and 10 of the Complaint."). The majority of courts appear to favor granting leave to amend. *Cf. Telford Borough Auth. v. U.S. EPA*, No. 12-CV-6548, 2021 U.S. Dist. LEXIS 198815, *5 (E.D. Pa. Oct. 15, 2021) (collecting cases). The undersigned recommends that the Court grant Plaintiff's motion to deem conceded but rather than deem the various paragraphs admitted, the undersigned instead recommends that the Court direct the Defendants to file an amended answer that complies with Rule 8(b).

## B. Motion to Take Judicial Notice

On March 16, 2020, Olson filed a motion to ask the Court to take judicial notice of thousands of pages of "documents filed before the Public Services Commission . . . in the case styled as *In the Matter of the Virgin Islands Water and Power Authority Petition for Electric System Rate Relief*, PSC docket no. 678." (Pl's Mot. to Take Jud. Not. 1, filed Mar. 16, 2020 (hereinafter "Jud Not. Mot.").) Plaintiff also attached as an appendix to her motion copies of the documents generated in the administrative proceeding. Citing Rule 201 of the Federal Rules of Evidence (not the Virgin Islands Rules of Evidence), Olson asserts that the Court "*must* take judicial notice if a party requests it and the court is supplied with the necessary information.'" *Id.* at 7 (emphasis in original) (quoting Fed. R. Evid. 201(c)). Judicial notice "may be accomplished 'at any stage of the proceeding[,]'" she argues further. *Id.* (quoting Fed. R. Evid. 201(d)). Olson is correct. But she fails to explain what the Court should do once it takes judicial notice. And for this reason, the undersigned recommends that the Court deny Olson's motion without prejudice.[5]

First, Olson's failure to cite the Virgin Islands rule is not fatal since the two rules are identical. *Compare* V.I. R. Evid. 201 *with* Fed. R. Evid. 201. Thus, the undersigned will proceed as if Olson cited the Virgin Islands rule. Second, even though Olson is correct—Rule 201 does require that courts take

---

[5] As with their response in opposition to Plaintiff's motion to deem conceded, the Defendants also filed their response in opposition to Plaintiff's motion to take judicial notice late and without seeking leave or filing a motion showing excusable neglect. The undersigned incorporates the reasons given in the preceding section and recommends that the Court disregard the Defendants' response and, by extension. Plaintiff's reply.

judicial notice when asked and does provide that judicial notice can be taken at any stage of the proceedings—what Olson neglected to provide here is background. "Rule 201 does, indeed, say that judicial notice is 'mandatory' when a party requests it and supplies the necessary supporting information. But facts subject to judicial notice are not exempt from analysis under the other rules of evidence." *Sunstar, Inc. v. Alberto-Culver Co.*, Nos. 01 C 736, 01 C 5825, 2006 U.S. Dist. LEXIS 85678, *9 (N.D. Ill. Nov. 16, 2006) (citations omitted). "As a result, courts refuse to take even 'mandatory' judicial notice when the fact to be noticed is inadmissible under Rule 403." *Id.* Further, courts do not take judicial notice just for the sake of taking judicial notice. Taking judicial notice is done in connection with some other proceeding in a case. "A court's decision to take judicial notice of a fact is nothing more than a finding that the proffering party need not undertake the burden of litigating the existence of the fact." *United States v. Falcon*, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997).

Olson fails to explain how she will use the documents she wants judicially noticed. She says in her reply—which the undersigned references only for context given the recommendation in footnote 5—that she seeks judicial notice of four "basic groups of documents: (1) the transcripts of hearings, (2) PSC orders, (3) WAPA's own documents submitted in litigation, and (4) PSC documents (including but not limited to market reports and similar commercial documents (e.g., S&P and Moody's reports)." (Pl.'s Reply 2, filed Jan. 10, 2022.) But again, Olson fails to explain what facts would be established and for which claims if the Court were to take judicial notice. Olson does not point to any admissions in the transcripts of the hearings before the PSC in which WAPA admitted, for example, that it favors governmental customers over individual or business customers and judicial notice of that fact would help alleviate the burden of proving facts in support of Count II.

But perhaps most importantly, Olson does not address the fact that Virgin Islands courts can take judicial notice of the *existence* of documents filed in other proceedings but cannot take judicial notice of

the *contents* of those documents. "'A distinction must be carefully drawn between taking judicial notice of the existence of documents in the . . . file as opposed to the truth of the facts asserted in those documents.'" *Farrell v. People*, 54 V.I. 600, 616 n.13 (2011) (quoting *State v. Kotis*, 984 P.2d 78, 102 (Haw. 1999)). Judicial notice is never appropriate when the facts are disputed. WAPA may not dispute the existence of the hearing transcripts, for example, or PSC's orders. But WAPA may dispute the facts asserted in those documents, particularly since matters before the PSC are somewhat adversarial insofar as the PSC must balance the interests of public utilities with ratepayers. *Cf. V.I. Water & Power Auth. v. V.I. Pub. Servs. Comm'n*, Civ. No. 657/04, 2006 V.I. LEXIS 37, *52-54 (V.I. Super. Ct. Nov. 30, 2006) (holding that the PSC must provide notice and a meaningful hearing to public utilities under title 30); *see also id.* at *52-53 (referring to "'a *meaningful* hearing'" as one in "'which interested persons can present their views and present evidence in support thereof." (emphasis in original) (quoting *V.I. Hotel Ass'n v. V.I. Water & Power Auth.*, 8 V.I. 580, 587 (3d Cir. 1972)). Everyone, including the courts, would benefit if the parties were alleviated of some of burdens of litigating the existence of facts. But that process should not be done in a vacuum and can be done closer to trial. For these reasons, the undersigned recommends that the Court deny Olson's motion to take judicial notice without prejudice.

## C. Motion for Judgment on the Pleadings

The Defendants jointly move for judgment on the pleadings, seeking dismissal of all claims. In ruling on a motion for judgment on the pleadings, "[c]ourt[s] view[] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff[.]" *Reynolds v. Rohn*, 70 V.I. 887, 896 (2019) (quotation marks and citation omitted). Courts "may not consider evidence from any source outside of the pleadings and the exhibits attached to the pleadings in determining whether . . . to grant a motion for judgment on the pleadings." *Id.* (quotation marks, brackets, and citation omitted). "'[A] motion for judgment on the pleadings should not be granted unless the moving party has established

that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Id.* (quoting *United Corp. v. Hamed*, 64 V.I. 297, 305 (2016)).

Before addressing the merits, the undersigned first must make a point about the posture of the motion because, technically, the Court denied it from the bench on September 7, 2021. Although that ruling was not reduced to writing yet, it is enforceable per Rule 85 of the Virgin Islands Rules of Civil Procedure. During the same hearing, the Court also granted the parties leave to submit supplemental briefing. From a procedural standpoint, if the Defendants' motion was denied, the supplemental briefing could be construed as a motion for reconsideration. But it might only satisfy the clear error of law basis. *See generally* V.I. R. Civ. P. 6-5(b) (listing change in law, new evidence, clear error, or failure of court to consider previously-raise issue as grounds for reconsideration). The other option is to view the denial of the motion from the bench as having been vacated implicitly by the Court granting the parties leave to file supplemental briefing.

The staff master has authority in all complex cases to recommend a ruling on dispositive motions. *See generally In re: Authorization for the Creation & Appointment of Staff Master*, 2021 V.I. Supreme LEXIS 14 at *3. The staff master does not have authority to reconsider a judge's ruling on a dispositive motion. Thus, if the Court believes that its bench ruling stands, and the motion was denied from the bench, then the undersigned recommends, for the reasons given below, that the Court revisit that ruling, deny the request to convert the motion into a motion for summary judgment, and grant it in part and deny it in part. *Cf. Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 609 (2012) ("[T]he common law confers trial courts with the discretion to revise any interlocutory order at any time prior to entry of a final judgment."). Alternatively, if the Court agrees that the bench ruling was implicitly vacated, then the undersigned recommends only that the Court deny the request to convert the motion for judgment on the pleadings into a motion for summary judgment and grant the motion in part and deny it in part.

One last point must be addressed before turning to the merits of the claims Olson asserted. The Defendants make a threshold argument that Olson lacks standing and, thus, all her claims are not justiciable. The Court should reject these arguments. "The Virgin Islands Supreme Court [has] acknowledged that 'whether the party bringing suit has a right to the relief it is seeking goes to the merits of the cause of action – not the Superior Court's authority to hear the case in the first place.'" *Hess Oil V.I. Corp. v. Fluor Daniel*, 72 V.I. 676, 697 (Super. Ct. 2020) (brackets and ellipsis omitted) (quoting *United Corp.*, 64 V.I. at 303). "Thus, standing in the Virgin Islands challenges whether a plaintiff has stated a claim for relief." *Id.; accord Save Coral Bay, Inc. v. Bryan*, 2022 VI 7, ¶ 10 n.1 (2022) ("[B]y dismissing SCB's complaint as moot, the Superior Court in effect dismissed it for failure to state a claim pursuant to Virgin Islands Rule of Civil Procedure 12(b)(6)."). Olson alleges that she is customer of WAPA and gave a deposit to WAPA to obtain electricity, which makes her a ratepayer. The Court also granted Olson's motion to certify a class. Although the parameters of the class must still be defined, Olson now represents a larger group of persons. Her standing is not at issue here.

Justiciability is also not an issue here. "Justiciability is itself a concept of uncertain meaning and scope." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). The Supreme Court of the Virgin Islands has not addressed justiciability directly. But as the Supreme Court of the United States explained, justiciability may best be

> illustrated by the various grounds upon which questions sought to be adjudicated . . . have been held *not to be* justiciable. Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.

*Id.* (emphasis added) (footnotes omitted). "Additional uncertainty exists in the doctrine of justiciability because that doctrine has become a blend of constitutional requirements and policy considerations. And a policy limitation is 'not always clearly distinguished from the constitutional limitation.'" *Id.* at 97 (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1955)).

If justiciability in Virgin Islands jurisprudence encompass the same concepts stated in *Flast*, then neither mootness nor standing are at issue here. *Cf. Hess Oil V.I. Corp.*, 72 V.I. at 697 ("[S]tanding, like mootness and other federal constitutional doctrines, are claims-processing rules in the Virgin Islands . . . ."). WAPA has not alleged that any of Olson's claims are moot, and standing was addressed above. The other concerns—political questions, advisory opinions, and policy restrictions—are also not at issue here. No question is raised about the Executive Branch or the Legislative Branch that the Court should refrain from addressing. Although declaratory judgments do have an advisory aspect to them insofar as they can be commenced before rights have been violated, a judgment here would not yield an advisory opinion. Finally, any policy concerns that may be raised are addressed below or have already been resolved by the Court, e.g., by denying the motion to appoint a receiver.

Even if justiciability should be used in Virgin Islands jurisprudence in a more general sense to refer to a "determination of a justiciable controversy where the plaintiff is in doubt as to his legal rights[,]" *Tip Top Constr. v. Gov't of the V.I., Dep't of Prop. & Procurement*, 41 V.I. 72, 78 (Terr. Ct. 1999), there is a controversy here that can be relieved via a declaratory judgment. Relying solely on persuasive precedent (without noting the absence of binding precedent on this question), the Defendants argue that declaratory judgment actions "'must involve an actual and justiciable controversy.'" (Defs' Jt. Mot. for Jgmt on the Pleadings 4, filed Dec. 29, 2020) (hereinafter "Pleadings Mot.") (quoting *Pate v. Gov't of the V.I.*, 62 V.I. 271, 286, (Super. Ct. 2015)) (citing *Fenster v. DeChabert*, 65 V.I. 20, 44 (Super. Ct. 2016); *Walsh v. Daly*, No. ST-01-CV-165, 2014 WL 2922302, *7 / 2014 V.I. LEXIS 36, *28 (V.I. Super. Ct., Jun. 18, 2014); *Companion Assurance Co. v. Alliance Assurance Co.*, 21 V.I. 34, 38 n.3 (D.V.I. 1984)).) None of the cases the Defendants rely on withstand scrutiny, however.

*Companion Assurance Company* was decided by the District Court of the Virgin Islands at a time when that court had broader subject-matter jurisdiction in the Virgin Islands. Like other Virgin Islands

courts, the District Court is not an Article III court. It is an Article IV court. But it exercises the jurisdiction of a district court of the United States and, thus, is limited by the case or controversy requirement of Article III. *See Russell v. DeJongh*, 48 V.I. 1062, 1065 n.3 (3d Cir. 2007). Thus, *Companion Assurance Company*'s holding—that an actual controversy must be present in actions brought under the Virgin Islands Declaratory Judgment Act—speaks to the limitations on that court's jurisdiction. *Cf. Companion Assurance Co.*, 21 V.I. at 38 ("Indeed, the requirement that an actual controversy exist is no more than a recognition that the federal judicial power is limited to 'cases' and 'controversies' pursuant to the United States Constitution, Art. III § 2, cl.1."). The Superior Court's jurisdiction is not limited by Article III.

*Walsh* should also be rejected. It relied on *Companion Assurance Company* when it held that "the discretionary authority to grant [a] declaratory judgment pursuant to 5 V.I.C. § 1261, *et seq*. . . . is only permissible where a justiciable controversy exists." *Walsh*, 2014 V.I. LEXIS 36, *28 (footnote omitted); *see id.* at 28 n.61 (citing *Companion Assurance Co.*, 21 V.I. 34 (D.V.I. 1984)). Since *Companion Assurance Company* focused on Article III limitations, and *Walsh* relied on *Companion Assurance Company*, both cases are not good law under current Virgin Islands Supreme Court precedent.

*Pate* too held that "[t]he 'decision to entertain a declaratory action is within the discretion of the Court,' and the matter must involve an actual and justiciable controversy." *Pate*, 62 V.I. at 285-86 (footnote omitted) (quoting *Flavo-Rich v. Quinn*, 18 V.I. 530, 532 (D.V.I. 1981)). *Pate*, in turn, relied on *Flavo-Rich*, which involved a tax dispute brought in the District Court as a declaratory judgment action against the Commissioner of the Virgin Islands Department of Finance and the United States Department of Treasury. The District Court dismissed the action—not because of Article III limitations—but because administrative remedies had not been exhausted before filing suit. *See Flavo-Rich*, 18 V.I. at 530 ("[W]here an appeal from an action of an administrative body is provided, declaratory judgment will be denied."). Arguably *Flavo-Rich* could be seen as having been decide on policy concerns like those noted

in *Flast*. But exhaustion of administrative remedies is not at issue here. The other case *Pate* relied on held that "'[a] declaratory judgment may issue only where the constitutional standing requirements of a justiciable controversy are satisfied.'" *Pate*, 62 V.I. at 286 n.29 (quoting *NASCAR v. Scharle*, 184 F. App'x 270, 274 (3d Cir. 2006), parenthetically)); *see NASCAR*, 184 F. App'x at 274 (quoting *St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Gov't of U.S.V.I.*, 218 F.3d 232, 240 (3d Cir. 2000)). Again, constitutional standing requirements do not apply in the Virgin Islands. So, the cases *Pate* relied on do not support the justiciability requirement it imposed.

Lastly, *Fenster* is also not good law. It relied on *Pate* and another Superior Court case that, in turn, relied on both *Walsh* and *Companion Assurance Company*. *See Fenster*, 65 V.I. at 43 n.57 (citing *Bd. of Dirs. of Shibui Condo. Ass'n v. Darian Sols., LLC*, No. ST-2013-CV-395, 2015 V.I. LEXIS 100, at *11 (V.I. Super. Ct. Aug. 31, 2015)); *see Bd. of Dirs. of Shibui Condo. Ass'n*, 2015 V.I. LEXIS 100 at *11 n.51 (citing *Walsh, Companion Assurance Co.*, and *Pate*). Unlike *Walsh* and *Pate*, *Fenster* explained— for the first time—why the Virgin Islands Declaratory Judgment Act might include a justiciable requirement. *See Fenster*, 65 V.I. at 43 n.58 ("[S]ince Virgin Islands courts are not Article III courts, it stands to reason that the discretion of a Virgin Islands court to grant declaratory relief is not constrained by a 'justiciable controversy' requirement, at least in the same manner as federal courts, since the jurisdiction of Virgin Islands courts does not depend on satisfying the Article III 'case-or-controversy' requirement."). The reason *Fenster* gave is because "the Virgin Islands Legislature has expressly provided that the Virgin Islands Declaratory Judgment Act 'should be harmonized, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees.'" *Id.* (brackets omitted) (quoting *Estate of George v. George*, 50 V.I. 268, 274 (2008)); *see also* 5 V.I.C. § 1272 ("This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those jurisdictions which enact it and to harmonize, as far as possible, with federal laws and regulations on the subject of

declaratory judgments and decrees."). But the Court also "note[d] that Virgin Islands courts could potentially deviate from this interpretation, should the facts and circumstances warrant it." *Fenster*, 65 V.I. at 43 n.58.

Even if *Fenster* is correct—and the Legislature implicitly incorporated federal justiciability requirements into the Virgin Islands Declaratory Judgment Act—most of Olson's claims are justiciable. Section 1261 of title 5 of the Virgin Islands Code empowers the Superior Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Title 5, section 1262 of the Virgin Islands Code allows "[a]ny person . . . whose rights . . . are affected by a statute, . . . contract or franchise . . . [to] have determined any question of construction or validity . . . and obtain a declaration of rights, status or other legal relations thereunder." Olson seeks a declaration of rights and legal relations on her own behalf and on behalf of other ratepayers regarding the construction of section 9a of title 30 of the Virgin Islands Code. Title 5, section 1263 of the Virgin Islands Code authorizes the filing of a declaratory action before a contract has been breached. The cash deposits WAPA imposes on its ratepayers can be seen as a form of contract imposed by statute, a precondition to receiving electrical service. As further explained below, several courts have held that cash deposits given to public utilities in exchange for service, on which interest must be paid, creates a debtor – creditor relationship. Contract law recognizes the concept of anticipatory repudiation. *Cf. Caribe Contracting Co. v. Edwards*, 18 V.I. 194, 199 n.7 (Terr. Ct. 1982). Olson can bring a declaratory action, anticipating that WAPA may be "unable or apparently unable to perform[,]" *id.* (quoting Restatement Second of Contracts § 250(b) (1981)), even though WAPA has not yet breached its agreement to return the cash deposits with interest to Olson or the class. Lastly, title 5, section 1270 of the Virgin Islands Code states that the Virgin Islands Declaratory Judgment Act "is . . . remedial; [and] its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." A

liberal construction supports finding that Olson's claims are justiciable. For these reasons, even if federal justiciability requirements have been incorporated into the Virgin Islands Declaratory Judgment Act, the undersigned recommends that the Court find that Olson has asserted a justiciable controversy that can be redressed via a declaratory judgment action.

### i. Count I

In Count I of her First Amended Complaint, Olson seeks declaratory and injunctive relief in five discrete areas. Specifically, paragraph 75 of the First Amended Complaint provides as follows:

> Plaintiff, and class members, have a need for this Court to declare: (i) whether WAPA is insolvent, (ii) the amount of statutory interest due to the Plaintiff, (iii) the amount of statutory interest due to other WAPA customers, (iv) declare the amount of funds that WAPA must set-aside to comply with its statutory obligation under 30 V.I.C. § 9a(b) and order/enjoin the Defendants to do so, and (v) that WAPA is in a "state of emergency."

(First Am. Compl. ¶ 75.) Each of the five requests operates, essentially, as stand-alone claims for declaratory relief. In other words, even though Olson only pleaded two claims for relief, Count I seeks declaratory relief on five different bases.

The purpose of a declaratory judgment action is to "declare rights, status, and other legal relations." 5 V.I.C. § 1261. However, because declaratory judgment actions must be based on an underlying claim, courts look to "the primary purpose," the " 'essence,' " or the " 'controlling issue' in suit[s] for declaratory judgment." *Rohn & Associates, LLC v. Marshall A. Bell & Associates, P.C.*, 71 V.I. 392, 405 (Super. Ct. 2019). For example, in *Rohn & Associates*, a declaratory judgment action, the court considered the subject matter of the underlying dispute, a contract, to analyze where venue lies contract actions. Courts have likewise recognized that, "in declaratory judgment actions, the statute of limitation for the analogous legal remedy will also apply to the declaratory judgment action." *Gardei v. Conway*, 868 S.E.2d 775, 780 (Ga. 2022).

Since a declaratory judgment action is not a stand-alone claim but rather the means to obtaining a

declaration of rights, statuses, and legal relations, there must be a claim or cause of action on which the action is based or the possibility that a claim or cause of action will arise. *Cf. Mack v. Plaza Dewitt Ltd. P'ship*, 484 N.E.2d 900, 905 (Ill. Ct. App. 1985) ("The remedy of a declaratory judgment is cumulative of other forms of relief. It is not deemed to create in itself substantive rights or duties, however, but instead merely affords an additional procedural method for their judicial determination. Because the remedy is strictly procedural, an action for such relief must state a claim based upon particular substantive legal theories." (citations omitted)). Thus, "[a] contract may be construed either before or after there has been a breach thereof" via a declaratory judgment action. 5 V.I.C. § 1263. It is immaterial that the breach has not yet accrued. Instead, it is the disagreement between the parties as to the interpretation of that contact— or between "persons interested . . . in the construction of wills and other writings[,]" 5 V.I.C. § 1264(c)— that provides the basis for a declaratory judgment action. Because some claim or right of action must support the request for declaratory relief, the undersigned considers each of Olson's requests separately.

### a. Count I (i) – WAPA insolvency

The undersigned recommends that the Court grant the Defendants' motion as to Count I (i) in which Olson seeks a judgment declaring WAPA insolvent. The complaint alleges that "WAPA is effectively insolvent . . . because its liabilities are greater than its assets [and it] . . . is unable to pay its bills as they become due." (First Am. Compl. ¶ 31 (quotation marks and citation omitted).) The complaint also alleges that "WAPA's revenues are insufficient to meet its expenses." *Id.* ¶ 32 (quotation marks and citation omitted). The Defendants denied both allegations in their Answer. However, even when viewing these allegations in the light most favorable to the plaintiff, it is clear that Olson has failed to state a claim for relief – there is no authority in the Virgin Islands authorizing a proceeding to declare a person or corporation insolvent.

As a threshold matter, insolvency is an area largely covered by bankruptcy law now. In fact, "the

words insolvency and bankruptcy are synonymous terms in ordinary usage, meaning, and common understanding. Furthermore, in ordinary parlance and understanding there is no distinction between insolvency proceedings and bankruptcy proceedings, and the terms are used interchangeably." *In re: Perry*, 157 F. Supp. 910, 915 (W.D. Mich. 1958). Several provisions within the Virgin Islands Code speak of "insolvents" or "insolvency proceedings" synonymously or in tandem with bankruptcy proceedings. *See, e.g.*, 22 V.I.C. § 410 (disqualifying bankrupt or insolvent individuals from being directors of domestic mutual insurers) ("Adjudication as a bankrupt or taking the benefit of any insolvency law or making a general assignment for the benefit of creditors disqualifies an individual from being or acting as a director."). *See also, e.g., In re: Wittstein*, 3 V.I. 374 (D.V.I. 1958) (concluding that federal bankruptcy laws partly superceded the Virgin Islands Assignment for the Benefit of Creditors statutes, 5 V.I.C. §§ 1201-32, but not as to voluntarily commenced assignment proceedings).

To be sure, the words "insolvent" and "insolvency" as well as the phrase "insolvency proceedings" do appear throughout the Virgin Islands Code. *See, e.g.*, 9 V.I.C. § 126 ("Any bank or foreign bank shall be deemed insolvent, for the purposes of this title, when upon an examination made by the Banking Board, or by any of its authorized representatives, it is found that such bank or foreign bank has lost its entire reserve and one-third part or more of its capital stock."); 11A V.I.C. § 1-201(22) (Uniform Commercial Code) ("'Insolvent' means: (A) having generally ceased to pay debts in the ordinary course of business other than as a result of bona fide dispute; (B) unable to pay debts as they become due; or (C) insolvent within the meaning of federal bankruptcy law."); 13 V.I.C. § 533(b) (Corporate Franchise Taxes) ("Failure of any corporation to pay its annual franchise tax for a period of one year from and after the date when such payment first became due, shall be prima facie evidence of the insolvency of such corporation and the fact of such insolvency may be shown by the government of the United States Virgin Islands or by any private person or corporation."); 28 V.I.C. § 172 (Virgin Islands Fraudulent Transfer Act) ("(a) A

debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a ffair valuation. (b) A debtor who is generally not paying debts as they become due is presumed to be insolvent."). *See also, e.g.*, 11A V.I.C. § 1-201(21) ("'Insolvency proceeding' includes an assignment for the benefit of creditors or other proceeding intended to liquidate or rehabilitate the estate of the person involved."). The Code also provides for insolvency proceedings in certain instances. *See, e.g.*, 29 V.I.C. § 907 (mandating that the Banking Board notify the Governor when the Economic Development Bank is not in a sound financial condition and authorizing a receivership action). An action to dissolve a domestic corporation or to force a foreign corporation to forfeit its business license can also be commenced where, *inter alia*, "the corporation is insolvent, as evidenced by a return of no property found in execution, or by a judgment or decree in insolvency proceedings or an adjudication of bankruptcy[.]" 13 V.I.C. § 288(a)(1).

Arguably, these statutes could be read to at least imply that Virgin Islands courts should recognize insolvency proceedings. If not, a domestic corporation might be immune from corporate dissolution. Courts also must give effect to all provisions of a statute if possible. *See In re L.O.F.*, 62 V.I. 655, 661 (2015) ("In analyzing a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it—or another provision—'wholly superfluous and without an independent meaning or function of its own.'" (quoting *Defoe v. Phillip*, 56 V.I. 109, 129 (2012) (*per curiam*)). Since the Legislature included a definition of "insolvency proceeding" within the Virgin Islands Uniform Commercial Code, it stands to reason that the Legislature either authorized insolvency proceedings—at least in the commercial context—or acknowledged that insolvency proceedings were recognized at common law. In fact, the Virgin Islands Declaratory Judgment Act itself speaks to insolvency proceedings, providing that

> [a]ny person interested as . . . creditor . . . in the administration . . . of the estate of . . . an . . . insolvent, may have a declaration of rights or legal relations in respect thereto: (a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or others; or (b) To direct the executors, administrators, or trustees to do or abstain from doing any particular

act in their fiduciary capacity; or (c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

5 V.I.C. § 1264 (subsection breaks omitted). But even this statute speaks in terms of an estate, meaning an estate must have been established to manage the insolvent's affairs, and estates are only established to manage the affairs of insolvent persons and corporations in bankruptcy proceedings.

Given the uncertainty whether insolvency proceedings exist under Virgin Islands law, and then whether under statutory or common law, and further, if under common law a *Banks* analysis would be required, which neither side conducted, the undersigned recommends that the Court decline to enter judgment as to whether WAPA is insolvent. Section 1266 of title 5 of the Virgin Islands Code gives courts the discretion to "refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Instead, it would prolong the proceedings as the Court and the parties would first have to determine the scope of insolvency proceedings generally before Olson can be permitted to establish the merits of her claim. Even if insolvency proceedings are available under Virgin Islands law, declaring WAPA insolvent would not terminate the uncertainty here. Accordingly, the undersigned recommends that the Court exercise its statutory discretion and decline to enter judgment on Count I (i).

### b. Count I (ii) and (iii) – Interest Due Olson and the Class

The undersigned recommends that the Court deny the Defendants joint motion for judgment on the pleadings as to Counts I (ii) and (iii). In her First Amended Complaint, Olson asks for a declaration as to the amount of interest WAPA owes her on her deposit (Count I (ii)) and amount WAPA owes the class at large (Count I (iii)). Since the claims are the same and may even be duplicative, the undersigned addresses them together. Section 9a of title 30 of the Virgin Islands Code directs that WAPA must "pay interest on cash deposits paid by customers, as a condition precedent to receiving service, at a rate equal

to the average prevailing interest paid by local banks on saving accounts." 30 V.I.C. § 9a(b). The

Defendants first argue that Olson has not alleged that she was a customer of WAPA for more than six

months and second that Olson has not alleged that she (or any member of the class) requested a refund but

did not receive it. WAPA also objects that calculating the amount of interest due Olson and the class

cannot be done in a vacuum. (*See* Pleadings Mot. 7 ("There is no way to calculate the amount of interest

payable to Plaintiff, or any other putative class member without allegations as to the length of time they

have been a customer and when, or even whether, they terminated their service.").

A threshold question here is what law governs. Olson cites to subsection (b) of section 9a. While

the Defendants cite to the same subsection, they also point to what they see as a fatal defect in Olson's

complaint, namely the lack of "allegations that anyone has requested a refund but not received one." *Id.*

And the right to obtain a refund is found only in subsection (a). Section 9a of title 30 provides:

> Except as provided in subsection (b), every public utility which requires its customers, as
> a condition precedent to receiving the service offered by such public utility, to make cash
> deposits with such utility to secure payment of tolls and charges shall pay interest on such
> cash deposits at an annual compounded rate of four and three quarters (4¾%) percent,
> which shall be refunded to the customer with his cash deposit upon termination of service
> for any reason other than unjustifiable nonpayment of tolls or charges by such customer;
> provided that interest shall not be payable by the utility upon deposits held by such utility
> for less than six (6) months; and provided further, that the customer may, upon application
> therefor on forms prescribed and furnished by the utility, obtain periodic payments of
> accumulated interest prior to the termination of service when the interest on said deposit
> equals $10 or more.

30 V.I.C. § 9a(a). Subsection (b), quoted earlier, directs that the interest WAPA must pay has to be "at a

rate equal to the average prevailing interest paid by local banks on saving accounts." *Id.* § 9a(b). Finally,

subsection (c) provides:

> Every public utility affected by the provisions of subsection (a) of this section shall disclose
> to the customer, with its final billing statement in each calendar year, the amount of interest
> which has accumulated on the security deposit during that calendar year and the total
> amount of interest which has accumulated and has not been claimed by said customer as
> permitted in subsection (a) of this section.

*Id.* § 9a(c). The question is whether WAPA is still subject to subsections (a) and (c).

Until 2016, WAPA was covered by both subsections. On September 30, 2016, the Legislature of

the Virgin Islands passed

> An Act amending title 30 Virgin Islands Code, chapter 1, subchapter I, section 9a relating
> to the interest rate paid by the Virgin Islands Water and Power Authority ("VIWAPA") on
> customer deposits, requiring that the VIWAPA pay interest on customer deposits at a rate
> equal to the average prevailing interest rate paid by local banks on saving accounts.

Act No. 7931, 2016 V.I. Sess. L. 185, 185 (Oct. 7, 2016). The act, which was signed by the Governor of

the Virgin Islands and became law on October 7, 2016, amended section 9a(a) by "adding an exception

clause at the beginning of the subsection[,]" adding subsection (b), and redesignating the existing

subsection (b) as subsection (c). *Id.* § 1 (codified at 30 V.I.C. § 9a).

There are two ways to view the 2016 amendments. The first way to view the 2016 amendments is

to read section 9a as having removed WAPA's duty to provide annual disclosures to its customers of the

amount of interest that accrued on their deposits (per subsection (c)) and that WAPA's customers can no

longer obtain periodic payments of any accrued interest over $10. In other words, WAPA only has to pay

interest on customer deposits at the average prevailing interest rate paid by local banks on savings

accounts. The second way to read the 2016 amendments is to construe the exception clause added to

subsection (a) as excluding WAPA only from the requirement of paying interest at an annual compounded

rate of 4.75%. In other words, the Virgin Islands Waste Management Authority (waste management

service), Viya (telephone service), and the Transportation Services of St. John, Inc. (public marine

passenger transportation services), for example, must pay interest at an annual compounded rate of 4.75%,

if they require their "customers, as a condition precedent to receiving the service offered . . . to make cash

deposits with such utility to secure payment of tolls and charges . . . ." 30 V.I.C. § 9a(a). But WAPA only

has to pay the average prevailing interest rate paid by local banks on savings accounts. All public utilities,

including WAPA, would still have to refund interest to their customers except for nonpayment of tolls and

charges. Customers of WAPA would also still be entitled to period payments of interest exceeding $10. This is the other way to construe the 2016 amendments.

"'A statute is ambiguous when the statutory language lends itself to two or more reasonable interpretations.'" *One St. Peter, LLC v. Bd. of Land Use Appeals*, 67 V.I. 920, 924-25 (2017) (quoting *Sharpe v. State*, 350 P.3d 388, 391 (Nev. 2015)). Based on the preceding discussion, the undersigned believes that section 9a is ambiguous. *Cf. id.* at 294 ("The plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which the language is used, and the broader context of the statute as a whole." (quotation marks, brackets, and citation omitted). The undersigned recommends, for the reasons given below, that the Court resolve the ambiguity by construing the 2016 amendments to title 30, section 9a of the Virgin Islands Code as only having affected the amount of interest WAPA must pay.

First, although titles and other descriptive headings in the Virgin Islands Code do not constitute a part of the law, *see* 1 V.I.C. § 45, courts can look to the titles of acts to discern legislative intent. In fact, the Supreme Court of the Virgin Islands has held that "the title of an act 'is available in case of ambiguity to clarify the legislative meaning[.]'" *Rohn v. People*, 57 V.I. 637, 646 n.6 (2012) (quoting 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 20:10, at 138 (7th ed. 2007)). *Accord Thompson v. First Jud. Dist. Ct.*, 683 P.2d 17, 19 (Nev. 1984) ("In construing an ambiguous statute, evidence of the legislature's intent may be gleaned from the title of the act by which the statute was enacted."); *State v. Super. Ct.*, 627 P.2d 686, 688 (Ariz. 1981) ("It is true that title and section headings in the statutes are not part of the law, but we can nevertheless refer to titles and captions in the legislative bills for indications of legislative intent." (citation omitted)). Here, the title of the Act No. 7931 shows that the legislative intent was simply to change the interest rate WAPA must pay on customer deposits from 4.75% to a rate equal to the average prevailing interest rate paid by local banks

on saving accounts.

Second, "'even where the language of the statute is plain, its meaning is controlled by its context,' and 'the statutory language must be construed in light of and governed by its context within the overall statutory scheme.'" *Atl. Human Res. Advisors, LLC v. Espersen*, 2022 VI 11, ¶ 21 (quoting *Motor Vehicle Admin. v. Aiken*, 12 A.3d 656, 665 (Md. 2011)). What's more, except clauses come into play only when there is a clash. As the Supreme Court of the United States explained "'[t]housands of statutory provisions use the phrase 'except as provided in . . . ' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict." *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351 (2020) (ellipsis in original) (quoting *Cyan, Inc. v. Beaver Cnty. Emples. Ret. Fund*, 583 U.S. 416, 428 (2018)). "Such clauses explain what happens in the case of a *clash*, but they *do not otherwise expand or contract* the scope of either provision by implication." *Id.* (emphasis added). Clearly there is a clash now between subsection (a), all public utilities must pay interest at 4.75%, and subsection (b), WAPA must pay interest at a rate equal to the average of what local banks pay on savings accounts. Thus, subsection (b) prevails over subsection (a) as to the interest rate WAPA must pay. There is no other clash with WAPA not having to pay interest on deposits held for less than six months or with WAPA having to disclose annually to each customer in the final billing statement the total amount of interest accrued.

Third, interpreting the 2016 amendments to have removed WAPA entirely from subsections (a) and (c) of section 9a would yield absurd consequences and "a court should not apply the plain text of the statute if 'it is uncontested that legislative intent is at odds with the literal terms of the statute,' or if doing so would lead to 'absurd consequences.'" *Rohn*, 57 V.I. at 646 n.6 (citations omitted). To read the language "[e]xcept as provided in subsection (b)" as having removed WAPA from all of subsection (a)—and by extension from all of subsection (c) since subsection (c) only applies to public utilities affected by

subsection (a)—would mean that customers receiving telephone service from Viya or trash removal service from the Virgin Islands Waste Management Authority, for example, can terminate service and obtain a refund of the interest that accrued on their accounts but customers of WAPA cannot. In fact, an argument could be made—if WAPA is not subject to subsection (a)—that WAPA must "pay interest on cash deposits paid by customers," 30 V.I.C. § 9a(b), but the interest no longer has to "be refunded to the customer with his cash deposit upon termination of service for any reason other than unjustifiable nonpayment of tolls or charges by such customer[.]" *Id.* § 9a(a). Instead, interest accrues for the benefit of WAPA to insulate it from losses caused by customers who terminate service and leave unpaid charges. In other words, if WAPA has been removed from subsection (a), then the statutory requirement that WAPA refund interest to its customers is also gone; only the initial deposit must be refunded. If WAPA has been removed from subsection (a), then WAPA also must now pay interest on all customer accounts, including those held for less than six months. Section 9a does not have to be read this way.[6]

The undersigned recommends that the Court construe the 2016 amendments as having changed only the statutory rate of interest that WAPA must pay on cash deposits. Customers of WAPA still have the right to "obtain periodic payments of accumulated interest prior to the termination of service when the interest on said deposit equals $10 or more." 30 V.I.C. § 9a(a). Customers of WAPA still have the right to "interest . . . refunded . . . with his cash deposit upon termination of service for any reason other than unjustifiable nonpayment of tolls or charges by such customer[.]" *Id.* WAPA does not have to pay interest

---

[6] Although the parties cannot stipulate to the law, the undersigned does note that this appears to also be the way the Defendants read the 2016 amendments. (*See* Pleadings Mot. 6 ("Section 9a(a) of the Virgin Islands Code provides that interest is only due and owed upon **termination** of service by WAPA and only for deposits held for 6 months or more. Section 9a(b) sets the interest rate applicable to WAPA, but does not change the requirement that interest is only due upon termination." (footnotes omitted) (emphasis in original)). The Government of the Virgin Islands in its response in opposition to Olson's motion to declare/hold sections 111(a) and 120 of title 30 of the Virgin Islands Code unconstitutional also reads the 2016 amendments as having changed only the rate of interest WAPA must pay. (*See* Gov't of the U.S.V.I.'s Resp. to Pls.' Const. Challenge to Tit. 30 of the V.I. Code, Secs. 111 and 120 6, filed Dec. 13, 2021 ("WAPA must refund the deposit to the customer upon the termination of service for any reason other than unjustifiable nonpayment of charges. . . . A customer may also obtain periodic payments of accumulated interest before the termination of service when the interest on the deposit equals ten dollars ($10.00) or more." (citations omitted)).)

on "deposits held . . . for less than six (6) months[.]" *Id.* And WAPA must still "disclose to the customer, with its final billing statement in each calendar year, the amount of interest which has accumulated on the security deposit during that calendar year and the total amount of interest which has accumulated and has not been claimed . . . ." *Id.* § 9a(c).

Olson is clearly a "person . . . whose rights, status or other legal relations are affected by a statute . . . ." 5 V.I.C. § 1262. On her own behalf and on behalf of the class, she "may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." *Id.* She seeks a declaration of the amount of interest due her (Count I(ii)), and the class (Count I(iii)). WAPA was required to "establish an accounting system for the proper statistical control and record of all expenses and income belonging to or managed or controlled by the Authority." 30 V.I.C. § 115(c). So WAPA should be able to report how much it holds in deposits from its customers. The amount of interest due on its customers' deposits before the 2016 amendments is clear: 4.75%. The amount of interest due after the 2016 amendment depends on what the average of the "prevailing interest paid by local banks on savings accounts" was between the date the amendments took effect in 2016 and now. Since prevailing interest rates on savings accounts vary, the average of those rates would also vary. A declaratory judgment can address these uncertainties, including the scope of the 2016 amendments because if WAPA no longer has to refund interest to its customers, then Olson may have failed to state a claim for relief.

Section 9a of title 30 of the Virgin Islands Code was enacted in 1974. For purposes of this recommendation, assume that the class includes at least one an individual who became a customer on January 1, 1975. Assume further that WAPA required a cash deposit in 1975 of $100.00. *Cf.* 30 V.I.R.R. § 105-4(b) (security deposit) ("The customer shall be charged an amount required for service which is equal to two (2) month's average actual billing where there is a previous history of usage by the customer,

or an amount equal to two (2) month's estimated billing where there is none or a minimum of $ 100.00. The security deposit must be paid in advance."). Assume also that this customer never requested a payout of the accrued interest. As of December 31, 2015, the amount of interest at 4.75% compounded annual on a $100 deposit would be approximately $540.00.[7] Whether the 4.75% interest rate should apply for all of 2016, none of 2016, or only until the 2016 amendments became law also must be decided. Assuming the 4.75% rate remained in effect until October 6, 2016 (the date the Governor signed Act No. 7931 into law), the amount of interest WAPA should have paid on this customer's $640 account ($100 security deposit + $540 in interest after 40 years) will depend on what the average was of the prevailing interest rates paid by local banks on savings accounts was on October 7, 2016, and how frequently they changed.

Olson clearly has raised important questions about the construction of section 9a with respect to WAPA and its ratepayers and the amount of interest each customer is owed. The Defendants' arguments contending that judgment of dismissal should be granted in their favor because Olson "cannot allege that she is entitled to statutory interest[,]" "has not alleged an amount of any interest she may be owed at some indefinite time in the future[,]" and " is unable to allege what she is owed . . . [or] how much WAPA must set aside[,]" (Pleadings Mot. 7), should be rejected. Viewing the pleadings in the light most favorable to the nonmoving party, it is clear that judgment on the pleadings should not be granted as to Count I(ii) or (iii). Section 9a of title 30 of the Virgin Islands Code requires that WAPA "pay interest on cash deposits paid by customers, as a condition precedent to receiving service . . . ." 30 V.I.C. § 9a(b). Olson alleges in her complaint that she "is a customer of WAPA and, like all WAPA customers as a condition precedent to receiving service, made a customer deposit with WAPA." (First Am. Compl. ¶ 24.) She also quoted section 9a(b) in her complaint. *See id.* ¶ 25 ("30 V.I.C. § 9a(b) provides that WAPA 'shall pay interest on

---

[7] Calculated using the Compound Interest Calculator at Investor.gov. https://www.investor.gov/financial-tools-calculators/calculators/compound-interest-calculator (last visited Oct. 13, 2022). The actual amount estimated was $639.97.

cash deposits paid by customers, as a condition precedent to receiving service, at a rate equal to the average prevailing interest paid by local banks on saving accounts.'" ). The Defendants, in their answer, denied Olson's allegations. (*See* Ans. ¶ 24 ("Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph No 24 of the Complaint and therefore deny same[.]"); *see id.* ¶ 25 ("Defendants deny the allegations asserted in Paragraph No 25 of the Complaint in that Plaintiff failed cite the previous paragraph of the statute which states when such interest must be paid[.]").) The Defendants are simply wrong in arguing that Olson "has not and cannot allege that she is entitled to statutory interest." (Pleadings Mot. 7.) If the undersigned is correct about the effect of the 2016 amendment, then the law does entitle Olson (and all of WAPA's customers) to statutory interest on their cash deposits, a fact Olson alleged in her complaint. Judgment is not appropriate here.

Olson also alleges that WAPA "will not be able to refund the . . . customer deposit and will not be able pay the . . . statutory interest due . . . under 30 V.I.C. § 9a(b) . . . ." (First Am. Comp. ¶ 74.) The Defendants, in their answer, deny these allegations too. (*See* Ans. ¶ 74 ("Defendants deny the allegations asserted in Paragraph No 74 of the Complaint[.]").) At this juncture, the Court views the allegations in the light most favorable to Olson. Contrary to what the Defendants contend, the customer does not have a duty to tell the public utility how much interest she is owed. (*But see* Pleadings Mot. 7 ("Plaintiff also has not alleged an amount of any interest she may be owed at some indefinite time in the future.").) Instead, it is the public utility who—if it requires a cash deposit as a precondition to receiving service—must disclose annually to each customer how much interest has accrued on the deposit. *See* 30 V.I.C. § 9a(c). WAPA does not have a "duty of hunting up its customers and thrusting the interest into their hands . . . . The Legislature intended to put upon the public service companies only the duty to pay or credit the interest if the customer demanded that it be paid or credited." *Commonwealth v. Ky. Power & Light Co.*, 77 S.W.2d 395, 396-97 (Ky. 1934). Since no demand has been made, no amount is due, and no

breach has occurred. But courts "have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 5 V.I.C. § 1261. And if the cash deposits are viewed as a type of contact imposed by statute, Olson and the class can ask the Court to construe their rights "before or after there has been a breach thereof." *Id.* § 1263. For this reason, the Defendants' argument that "Plaintiff's mere speculation that WAPA might be unable to meet its payment obligations under Section 9 is insufficient to establish the injury needed to have standing[,]" (Pleading Mot. 7-8), should also be rejected.

Again, viewing the pleadings in the light most favorable to the nonmoving party, Olson's allegations that she is a creditor of WAPA by virtue of her cash deposit, and that WAPA "'is currently not collecting enough revenues[,]'" (First Am. Compl. ¶ 40), support her claim that WAPA may not be able to refund the statutory interest due her and the class and would enable the Court to declare the amount of interest WAPA should have paid and how much the class and Olson are owed. According to the documents attached to the complaint, WAPA had approximately 55,000 customers as of 2019. If the undersigned's interpretation of the 2016 amendments is correct, then WAPA's customers continue to have a right, under section 9a(c) of title 30, to an annual accounting and under section 9a(a) to request payment of interest in excess of $10. If even half of WAPA's customer base, approximately 23,500 ratepayers according to the materials attached to the complaint, have an average of $50 each in accrued interest, and if all were to submit a form and request payment, the amount of money WAPA would have to pay out totals $1,175,000.00. Olson (and the class) have a right to have title 30, section 9a of the Virgin Islands Code construed, and a declaration made as to how much interest is due to her and the class.[8] Thus, the

---

[8] The undersigned has assumed, for purposes of this recommendation, that a cash deposit given by a ratepayer remains in place until the ratepayer terminates service and further that most members of the class (which still must be defined) will have given a security deposit prior to the amendments to section 9a of title 30 of the Virgin Islands Code. The 2016 amendments were not given retroactive effect and, even if they had been, it might run afoul of the Contract Clause of the United States Constitution as applied to the Territory through the Revised Organic Act as it would interfere with existing contracts and potentially deprive

undersigned recommends that the Court deny the Defendants' joint motion as to Counts I (ii) and (iii).

### c. Count I (iv) – Order WAPA to Set Aside Funds per 30 V.I.C. § 9a

The undersigned also recommends that the Court deny the Defendants' motion as to Count I(iv) but without prejudice. In her First Amended Complaint, Olson asks—in addition to declaring the amount of interest due to her and the class—that the Court also "declare the amount of funds that WAPA must set-aside to comply with its statutory obligation under 30 V.I.C. § 9a(b) and order/enjoin the Defendants to do so[.]" (First. Am. Compl. ¶ 75.) The Defendants may be correct that "WAPA is not under any statutory . . . obligation to keep such funds available in a separate account[,]" (Pleadings Mot. 7), and are correct that "Plaintiff does not allege one." *Id.* But even though Olson does not allege in her complaint that WAPA must maintain customer deposits separately, that is implied from her request to order WAPA to do so. In other words, Olson is not asking that the Court order WAPA to put funds aside only to have WAPA comingle them again a day later. Instead, Olson is implicitly asking the Court to declare that WAPA must maintain customer security deposits separately and order WAPA to do so going forward if it does not. The question is whether Olson has a right to this relief.

Nothing in section 9a of title 30 of the Virgin Islands Code speaks to how public utilities must account for their cash deposits. Many jurisdictions have enacted statutes, generally concerning security deposits given to landlords, that require that the holder of the deposit keep it in a separate, interest-bearing account in part to ensure that the funds cannot be reached by creditors of the deposit holder. *See, e.g., Karaa v. Yim*, 20 N.E.3d 943, 950 (Mass. Ct. App. 2014) (landlord tenant) ("The purpose of this subsection is to insure that 'tenant monies are protected from potential diversion to the personal use of the landlord, earn interest for the tenant, and are kept from the reach of the landlord's creditors.'" (quoting *Neihaus v.*

---

ratepayers of income if the interest on a pre-2016 deposit was calculated at the current rate and resulted in lower amount of total interest.

*Maxwell*, 766 N.E.2d 556, 558 (Mass. Ct. App. 2002)). Section 9a of title 30 does not impose such a requirement.

Courts have held that when customers must give a deposit and when public utilities must pay interest on that deposit, it creates a debtor-creditor relationship between the customer and the public utility. *See, e.g.,* L.S. Teller, *Deposit Required by Public Utility*, 43 A.L.R.2d 1262 § 1[b] (1955) ("The making of a deposit does not create a trust relationship between a utility and its customer."); *see also id.* ("Deposits are not to be regarded as assets of a utility, in determining the value of the utility's property, for rate purposes."). *Accord State by Van Riper v. Atl. City Elec. Co.,* 128 A.2d 861, 865 (N.J. 1957) ("Probably the most important determinative of whether a debtor-creditor, as opposed to an informal trust, relationship is created lies in the provisions for the payment or nonpayment of interest. Where the recipient of money obligates himself to pay a fixed rate of interest, regardless of whether the money is invested and without reference to the rate of return which it yields, it is only reasonable to expect, unless a contrary intention is clearly manifested by some other circumstance, that the recipient is to have the beneficial as well as the legal interest. Presumably a debt, involving only a personal obligation to repay the amount received at the proper time, is established."); *see also Lawson v. Bank One, Lexington, N.A.,* 35 F. Supp. 2d 961, 964 (E.D. Ky. 1997) ("There is limited existing authority to aid the Court in its quest to categorize plaintiffs' security deposit. Various courts have held that the lessee/lessor relationship is one similar to the debtor/creditor relationship. Courts have expounded on the debtor/creditor relationship to hold that a security deposit does not create a pledge but rather creates a 'contract right.'" (citations omitted)).

Courts have also recognized that, unless a contrary requirement exists, public utilities can comingle customer deposits and accrued interest on those deposits with other funds for general use of the public utility. *Cf. Comm'r v. Indianapolis Power & Light Co.,* 493 U.S. 203, 205 (1990) ("Customer deposits were not physically segregated in any way from the company's general funds. They were commingled

with other receipts and at all times were subject to IPL's unfettered use and control. It is undisputed that IPL's treatment of the deposits *was consistent with accepted accounting practice* and applicable state regulations." (emphasis added)); *accord Pintsch Compressing Co. v. Buffalo Gas Co.,* 280 F. 830, 840 (2d Cir. 1922) ("[T]he requirement of the statute that the gas companies shall pay interest is some support for the contention that such corporations are authorized not to treat the deposits as inactive moneys, but to use them in their business, and hence to mix these deposits with general funds."); *Atl. City Elec. Co.,* 128 A.2d at 865 ("When a fixed rate of interest is paid, as here, there is a strong inference that the payee is entitled to use the money to suit his own convenience.").

The Defendants, as the moving parties, have the burden to show that judgment as a matter of law is warranted here. The undersigned recommends that the Court find that they failed to carry that burden as to Count I (iv). Neither side has addressed what the soundest rule for the Virgin Islands would be in this instance if statutory law is absent and the common law would govern. *Cf. Carlos Warehouse v. Thomas,* 64 V.I. 173, 183 (Super. Ct. App. Div. 2016) ("When statutes are silent, the common law governs."). The parties have also not referred the Court to any regulations promulgated by the Public Services Commission that WAPA must follow, *cf.* 30 V.I.C. § 4, or to any other sections of the Virgin Islands Code that might apply. Nonetheless, the obligation to determine what law governs ultimately rests with the Court. And the undersigned notes that section 115 of title 30 of the Virgin Islands could be read to require that WAPA to keep its customer deposits segregated from other funds.

Section 115 was enacted in in 1964 so the Legislature was on notice of the statute when, in 1975, it enacted section 9a of title 30, requiring the payment of interest on customer deposits. *See Haynes v. Ottley,* 61 V.I. 547, 564 (2014) (*per curiam*) ("It is well-established that when a legislature adopts a statute, it does so with knowledge of existing law.") Section 115 mandates that WAPA "establish an accounting system for the proper statistical control and record of all expenses and income belonging to or *managed*

*or controlled by* the Authority." 30 V.I.C. § 115(c) (emphasis added). Customer deposits and the interest paid on those deposits should qualify as expenses (liabilities) or income managed or controlled by WAPA, particularly if the requirement to pay interest creates a debtor-creditor relationship.

Furthermore, the accounting system that WAPA must implement must also "segregate the accounts for water and power functions, make a reasonable allocation of costs that may be common to both functions, and insofar as advisable, *otherwise segregate the accounts* for different classes of operations, facilities, and activities of the Authority . . . ." *Id.* (emphasis added). The language "insofar as advisable" is unclear but is certainly strong legislative support that WAPA should keep different classes of operations and activities separate, which could be read to include customer cash deposits and interest earned on those deposits. Again, the Legislature was on notice of section 115 when it adopted section 9a, requiring interest on customer deposit law. However, section 115 is also preceded by the clause "[s]ubject to agreements with bondholders . . . ." *Id.* Presumably, bondholders may be permitted to dictate how WAPA maintains its accounting systems.

Since neither side has addressed the impact, if any, of section 115 on the case, or whether the Public Services Commission has promulgated regulations (or updated the regulations that were previously promulgated) to address how WAPA should control and record the cash deposits and associated interest it manages on behalf of its ratepayers, the undersigned recommends that the Court deny the Defendants' joint motion without prejudice as to Count I (iv). WAPA is under a statutory mandate to pay interest on cash deposits it requires from its customers, *see* 30 V.I.C. § 9a(b), and to establish proper controls over all expenses and income WAPA manages or controls. *See id.* § 115(c). Customer deposits and interest earned on those deposits would qualify as expenses or income managed by it. At this juncture, the undersigned cannot recommend that the pleadings establish as a matter of law that the Defendants are entitled to judgment on Count I (iv).

### d. Count I (v) – WAPA State of Emergency

The undersigned recommends that the Court grant the Defendants' motion for judgment on the pleadings as to Count I (v). In her First Amended Complaint, Olson asks that the Court declare that WAPA is in a "state of emergency." As a threshold matter, the Court already rejected the allegation that WAPA should be declared to be in a state of emergency when the Court, on the record on September 7, 2021, stated that "the only person that has jurisdiction is the Governor to declare anything a state of emergency. That's denied." (Hr'g Tr. 3:25-4:2 (Sept. 7, 2021).) Furthermore, the undersigned has not found any authority to support a cause of action for a state of emergency.

As noted earlier, declaratory judgment actions must be predicated on something else. To be sure, there have been instances where courts have declared states of emergency, as to their own operations, for example, due to the COVID-19 pandemic or in response to natural disasters. But there is very little case law where courts have declared a state of emergency regarding the merits of the case. In *Williams v. Edwards*, 87 F.3d 126 (5th Cir. 1996), the United States Court of Appeals for the Fifth Circuit noted that the District Court had declared a state of emergency with respect to a consent decree that had been in effect over Louisiana's prison system. And in *Spence v. Reeder*, 416 N.E.2d 914 (Mass. 1981), the Supreme Judicial Court of Massachusetts noted that the trial court had found a state of emergency existed in the Boston Housing Authority with respect to safety and security. There is also mention of statutory authority in other jurisdictions. For example, in *Fuller v. Scott*, 328 F. Supp. 842 (M.D.N.C. 1971), the dissenting opinion of Chief Judge Jones discussed North Carolina's riots and civil disorders statute, which would have let a superior court judge declare a state of emergency in public or private educational institutions. Similarly, in *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 665 (S.D. Miss. 2007), the District Court analyzed whether Mississippi laws prohibiting price gauging during states of emergency authorized a private right of action.

However, the undersigned has not found any cases (published or unpublished) where the plaintiff or petitioner commenced an action for declaratory relief and a judicial declaration of a state of emergency. Section 1004(a)(3) of title 23 of the Virgin Islands Code defines "state of emergency" as "a public declaration by the Governor to mitigate, prepare for, respond to, or recover from an emergency or major disaster." And emergency and major disasters are given the ordinary meanings of hurricane, tsunami, earthquake, and so forth. Admittedly, the Supreme Court of the Virgin Islands did state in *Rennie v. Hess Oil Virgin Islands Corporation*, 62 V.I. 529, 550 (2015), that "statutes which are silent as to who has standing to bring suit should be broadly interpreted to confer standing." And another Superior Court judge observed in *Dennie v. Olympic Rent-A-Car*, 72 V.I. 91, 98 (Super. Ct. 2019), that "[i]n *Rennie* . . . [the] Supreme Court . . . approved of those cases that had recognized the common law tradition that the denial of a remedy is the exception rather than the rule" (quotation marks, brackets, and citations omitted)). Notwithstanding the presumption that statutes should be construed to provide a remedy, the state of emergency statute should fall within the exception to this common law rule. Because declaring a state of emergency is not a recognized cause of action nor a type of relief courts can provide, the undersigned recommends that the Court grant the Defendants' motion for judgment on the pleadings as to Count I (v).

### ii. Count II

The undersigned recommends that the Court deny the Defendants' motion for judgment on the pleadings as to Count II. In her First Amended Complaint, Olson seeks a declaration that "WAPA's billing practices, as applied to the facts of this case, are unconstitutional insofar as WAPA's billing practices violate the Virgin Islands Bill of Rights by treating the two classes of WAPA customers (governmental versus non-governmental) differently." (First Am. Compl. ¶ 78.) Specifically, Olson challenges WAPA's practice of not terminating electrical service for governmental customers for nonpayment. Olson alleges that this practice conflicts with the treatment of individuals and businesses who do get service terminated

for nonpayment and that the disparity in treatment violates the Virgin Islands Bill of Rights. Olson seeks an injunction against WAPA and its directors to prohibit them from violating the Virgin Islands Bill of Rights going forward.

The Virgin Islands Bill of Rights provides that "[n]o law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws." 48 U.S.C. § 1561. In *Balboni v. Ranger American of the Virgin Islands, Inc.*, 70 V.I. 1048, 1096 (2019), the Supreme Court of the Virgin Islands held that "heightened rational basis review represents the appropriate standard for determining the validity of a Virgin Islands statute under the equal protection clause of the Virgin Islands Bill of Rights." The undersigned believes that Olson is mistaken that the Virgin Islands Bill of Rights applies here. According to its plain language, the statute applies only when a law is enacted that deprives persons of life, liberty or property without due process or denies them equal protection. How WAPA (and its directors) treats its customers, and whether WAPA favors governmental customers over individuals and business, is not a "law . . . enacted in the Virgin Islands."

However, even though Olson referenced the Virgin Islands Bill of Rights in her complaint, "pleadings must be read in their entirety whenever they are challenged." *Arno v. Hess Corp.*, 71 V.I. 463, 504 (Super. Ct. 2019). As the Defendants note on page 9 of their motion, the law that governs here is not the Virgin Islands Bill of Rights but rather "30 V.I.C. § 2 . . . ." (Pleadings Mot. 9.) Section 2 of title 30 of the Virgin Islands Code provides that

> [e]very public utility doing business within the Virgin Islands is required to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable. The charge made by any such public utility for any facility or services furnished, or rendered, or to be furnished, or rendered, shall be reasonable, just and nondiscriminatory. Every unjust or unreasonable or discriminatory charge for such facility or service is prohibited and is hereby declared unlawful. Every public utility is hereby required to obey the lawful orders of the Commission.

30 V.I.C. § 2. It is clear that what Olson is complaining of is the allegedly unfair treatment by WAPA between its ratepayers. Olson claims that WAPA treats governmental and non-governmental customers differently and that this difference in treatment is discriminatory. Although Olson cites to the Virgin Islands Bill of Rights in her complaint, "but as with any claim for relief, complaints are considered as a whole, and legal conclusions and labels ignored." *Arno*, 71 V.I. at 506; *accord Mapp v. Fawkes*, 61 V.I. 521, 534 n.11 (2014) (noting that statutes do not have to be cited in complaints).

Section 2 requires that WAPA furnish its services in a just and reasonable manner and not impose charges that are unjust and discriminatory. Discriminatory charges are prohibited and unlawful. Olson alleges that WAPA "provid[es] the Government of the Virgin Islands with electricity while being millions of dollars in arrears," which constitutes "special treatment that it [does] not extent to [its] non-governmental customers." (First Am. Compl. ¶ 54.) Again, although Olson does not cite section 2, this statute (and not the Virgin Islands Bill of Rights) would provide Olson (and the class) with a right of action. *Cf. Rennie*, 62 V.I. at 550. For this reason, the undersigned recommends that the Court deny the Defendants' motion for judgment on the pleadings as to Count II.

### iii. Failure to Exhaust Administrative Remedies

The Defendants make one further argument in support of their motion for judgment on the pleadings, namely that "[t]he Court lacks subject matter jurisdiction . . . [because] the PSC has primary jurisdiction over . . . billing disputes." (Pleadings Mot. 10.) The PSC has the "power, after hearing and notice by order in writing, to require and compel every public utility to comply with the provisions of this chapter, and with all other laws of the Virgin Islands applicable, and any ordinance or regulation relating to said public utility . . . ." 30 V.I.C. § 4. The PSC also has the authority to investigate complaints about public utilities and discriminatory or unjust practices. *See generally* 30 V.I.C. § 20(a) ("Upon its own initiative or upon reasonable complaint made against any public utility including the Virgin Islands Water

and Power Authority that any of the rates, tolls, charges, or schedules, or services, or time and conditions of payment, or any joint rate or rates, schedules, or services, are in any respect unreasonable or unjustly discriminatory, or any service in connection therewith, is in any respect unreasonable, insufficient, or unjustly discriminatory, or that any service is inadequate or cannot be obtained, or any billing for service inaccurate or erroneous the Commission may, in its discretion, proceed, with or without notice, to make such investigation as it may deem necessary or convenient."). The Defendants contend that Olson's claims must be dismissed because she failed to exhaust these administrative remedies first before commencing this action for declaratory relief. The Defendants are mistaken.

"[E]xhaustion applies where a claim is cognizable in the first instance by an administrative agency alone . . . ." *V.I. Conservation Soc'y v. Golden Resorts, LLLP*, 55 V.I. 613, 621 (2011) (quotation marks and citations omitted). While the Defendants are correct, the PSC can compel WAPA to comply with the law and investigate whether WAPA's practice is discriminatory of not suspending service to governmental customers for nonpayment, the Virgin Islands Code does not vest the PSC with exclusive authority. Instead, declaratory relief is available "whether or not further relief is or could be claimed." 5 V.I.C. § 1261. Furthermore, "[n]o action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for." *Id.*

Nothing in sections 4 or 20 of title 30 of the Virgin Islands Code supports construing the statutes as having deprived the Superior Court of its jurisdiction. Unlike other statutes where it is clear that the Legislature limited the Superior Court to appellate jurisdiction only, *cf. Baumann v. Pub. Emples. Rel. Bd.*, 68 V.I. 304 (Super. Ct. App. Div. 2018), there is no indication here that the Legislature intended to restrict the Superior Court's jurisdiction to issue declaratory judgments. To be sure, the Superior Court does have appellate jurisdiction over the PSC. *See* 30 V.I.C. § 34. And if two proceedings were pending simultaneously, one before the PSC and the other before the Superior Court, then perhaps the Defendants

would be on firmer ground. *Cf. Flavo-Rich*, 18 V.I. at 532. But nothing in title 30 vests the PSC with exclusive jurisdiction over customer disputes particularly since section 20 says that the PSC "*may*, in its discretion, proceed . . . to make such investigation as it may deem necessary or convenient." 30 V.I.C. § 20(a) (emphasis added). For these reasons, the undersigned recommends that the Court reject the Defendants' argument that Olson's complaint should be dismissed for lack of subject-matter jurisdiction. Olson was not required to seek relief from the PSC first, before coming to the Superior Court.

**D. Motion to Declare / Hold Section 111(a) and Section 120 of Title 30 of the Virgin Islands Code Unconstitutional[9]**

In response to questions asked at the September 7, 2021 hearing, as to whether the Court could grant Olson or the class any relief in light of sections 111(a) and 120 of title 30 of the Virgin Islands Code, Olson responded by filing a motion to declare or hold both sections unconstitutional. The undersigned recommends that the Court deny Olson's motion because it proceeds from the mistaken assumption that "WAPA is both judgment proof and immune from injunctive relief . . . ." (Pl's Mot. to Declare / Hold §§ 111(a) & 120 of tit. 30 of the V.I. Code Uncon. & Br. in Supp. of "Jurisdiction" 14, filed Oct. 6, 2021 (hereinafter "Declare Mot.").).

Section 111 of title 30 provides that "[a]ll property including funds of the Authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon its property . . . ." 30 V.I.C. § 111(a). There is one exception. Section 111(a) does "not apply to or limit the right of bondholders to pursue any remedies for the enforcement of any pledge or lien given by the Authority on

---

[9] Olson also filed a motion for leave to exceed the page limits. The undersigned presumes that this motion is not a matter pertinent to the proceedings and, for this reason, has not recommended a ruling. Nonetheless, the undersigned has proceeded under the assumption that the Court would grant it since the motion is unopposed and to deny it at this juncture would only mean further delay because Olson would have to be given leave to refile her motion within the page limits—the present motion exceeds the page limits by approximately six pages—which would also be problematic as the undersigned already heard argument on the motion.

its rates, fees, revenues, or other income or any other funds." *Id.* Based on this language, Olson claims

WAPA is judgment proof and moved to declare the statute unconstitutional. WAPA is not "judgment

proof," however.

First, there is a preliminary point – even if the Court were to declare section 111(a) unconstitutional

it would have no effect on another more general statute that also applies to WAPA. Section 479 of title 5

of the Virgin Islands Code exempts "[a]ll property of any public corporation or the government of the

Virgin Islands" from execution by a judgment debtor. 5 V.I.C. § 479(a)(5). While specific statutes govern

to the exclusion of more general statutes, *see Rohn*, 57 V.I. at 647, if a specific statute were declared

unconstitutional, the general statute would remain in effect. WAPA is a public corporation. *See* 30 V.I.C.

§ 103(a) ("There is hereby created a body corporate and politic constituting a public corporation and

autonomous governmental instrumentality of the Government of the Virgin Islands, by the name of the

'Virgin Islands Water and Power Authority' . . . ."). So, Olson's challenge to section 111(a) would have

no impact on section 479, which also exempts property of all public corporations from execution by

judgment debtors. Since WAPA is a public corporation, section 479 would also exempt its property from

execution.

Second, Olson's challenge stems from a misunderstanding of how judgments against public

corporations are executed. Courts in other jurisdictions have unanimously upheld similar statutes that

exempt the property of public corporations, explaining that

> "[a]s a general rule, the property of all private corporations is as subject to legal process
> for the satisfaction of debt as is the property of natural persons. An exception obtains,
> however, when the corporation is created to serve public purposes, charged with public
> duties, and is in the exercise of its franchise and in the performance of its duties. Then, on
> considerations of public policy, without regard to the nature or quality of the estate or
> interest of the corporation, according to the weight of authority, such property as is
> necessary to enable it to discharge its duties to the public and effectuate the objects of its
> incorporation is not subject to execution at law. The only remedy of a judgment creditor is
> to obtain the appointment of a receiver, and the sequestration of its income or earnings."

*WM Mobile Bay Environ. Ctr. v. City of Mobile Solid Waste Auth.*, No. 1190978, 2021 Ala. LEXIS 132, at *14-15 (Dec. 17, 2021) (quoting *Gardner v. Mobile & N.W. R.R. Co*, 15 So. 273-74 (Ala. 1894)). *Accord Union Reddi-Mix Co. v. Specialty Concrete Contractor*, 476 S.W.2d 160, 162 (Mo. Ct. App. 1972) ("Property of a municipality when used for a public purpose is not subject to seizure and execution."); *Grosso v. Paterson*, 157 A.2d 868, 870 (N.J. Super. Ct. 1960) ("Had this judgment been entered against a private individual or corporation, plaintiffs could have caused execution to issue thereon and levied on the judgment debtor's property. But since the judgment debtor is a public corporation, its property cannot be levied on."); *Vulcanite Paving Co. v. Phila. Rapid Transit Co.*, 69 A. 1117, 1117 (Pa. 1908) ("The decisions of our courts, as well as the statutes relating to the subject, are based on a policy of the law intended to keep intact the property belonging to and essential in the operation of a public service corporation, so that its creditors may not seize and sell the same piecemeal, and by thus disabling it defeat the purpose for which it was created by rendering it unable to perform its duties to the public."); *Adler v. Lincoln Hous. Auth.*, 623 A.2d 20, 22-23 (R.I. 1993) "The 'long-standing principle of exemption of public property' is justified by the public purpose for which municipalities and other public corporations are created. 'The reason for the exemption is obvious. Municipal corporations are created for public purposes and for the good of the citizens in their aggregate or public capacity. That they may properly discharge such public functions corporate property and revenues are essential, and to deny them these would impede and in some instances practically destroy the purposes of their creation.'" (citations omitted)).

Olson's argument proceeds from an understandable starting point: language in a decision of the United States Court of Appeals for the Third Circuit, *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 429 (3d Cir. 1991), construing section 111(a) as providing WAPA with "a limited form of immunity—it may be sued, but a victorious plaintiff cannot force it to pay any judgment entered." The undersigned submits that the language quoted above from *Turbe* is incorrect. As a threshold matter,

however, it could be argued under *Banks v. International Rental and Leasing Corporation*, 55 V.I. 967 (2011), that *Turbe* is binding precedent. It was a decision of the United States Court of Appeals for the Third Circuit at a time when that court functioned essentially as the *de facto* supreme court of the Virgin Islands. *Banks*, and *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (2014) (per curiam), which followed, declared that Third Circuit precedent is no longer controlling but only insofar as it concerns common law. *Turbe* was interpreting a statute, section 111(a). Arguably, Third Circuit precedent interpreting Virgin Islands statutes is still binding unless and until the Supreme Court of the Virgin Islands says otherwise because the basis for the holding in *Banks* was that the Legislature, in establishing a supreme court, had implicitly repealed the Virgin Islands' reception statute, title 1, section 4 of the Virgin Islands Code. The "concurrent authority" granted to the Superior Court by the Legislature is limited only "to shap[ing] Virgin Islands common law." *Id.* (citing *Banks*, 55, V.I. at 977-78). The Virgin Islands Supreme Court has never held that the Superior Court can chose whether to follow Third Circuit precedent interpreting Virgin Islands *statutes*. Nevertheless, the undersigned does believe that *Turbe* is incorrect.

Arguably, the language quoted above from *Turbe* is dicta insofar as the issue on appeal was whether the District Court was correct in entering judgment on the pleadings in favor of WAPA. *See Turbe*, 938 F.2d at 427-28 ("In this case from the District Court of the Virgin Islands, plaintiff Roger Turbe challenges a judgment on the pleadings entered in favor of the Virgin Islands Water and Power Authority ("WAPA"). Turbe alleged that WAPA's negligent failure to repair streetlights was the proximate cause of a criminal assault against him. We will affirm because we believe WAPA was under no legal duty to protect Turbe from criminal attack."). Since Turbe did not prevail, the language about WAPA having the choice to satisfy judgments entered against it was *dictum* and "*dicta* are not binding." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 755 n.8 (2014). *Turbe* did, however, base that discussion on an earlier decision. *See Turbe*, 938 F.2d at 429 (citing *Concepcion v. Soto*, 12 V.I. 200 (3d

Cir. 1975)). And *Concepcion* did construe section 111(a) as prohibiting execution and sale of WAPA' property. *See* 12 V.I. at 202 ("We think that the relief sought here, a judicial order that would compel the Authority to surrender its assets in payment of a money judgment for tortious personal injury, is within the meaning of the quoted prohibitory language, since the order sought would be 'judicial process' designed to reach the property of the Authority."). *Turbe* and *Concepcion* both recognized that judgment creditors can go after WAPA's liability insurance. *See id.* at 202-03 ("This does not make the right to sue the Authority or the obtaining of judgment against it meaningless. As a responsible agency the Authority can, and apparently does, carry liability insurance." (footnote omitted)); *Turbe*, 938 F.2d at 429 ("We have interpreted § 111(a) as permitting WAPA to refuse to pay judgments entered against it. But this provision does not grant full immunity to WAPA. Thus, a plaintiff may be able to satisfy a judgment against WAPA by relying on WAPA's liability insurance, if any exists." (citation omitted)). But *Turbe* and *Concepcion* were both speculating, however.

In other words, neither case looked to the decisions of state courts to see how those courts interpreted similar prohibitions. If they had, they would have seen that the majority of courts have never held "that plaintiffs are without a remedy." *Grosso*, 157 A.2d at 870. Instead, "[o]n the entry of the judgment it became the duty of the defendant . . . to provide means for payment of the judgment. That duty is enforceable by an order in the nature of a writ of mandamus." *Id.* (citing *Lyon v. City of Elizabeth*, 43 N.J.L. 158 (1881); *Twp Comm. of Piscataway Twp v. First Nat'l Bank of Dunellen*, 168 A. 757 (N.J. Err. & App. Ct. 1933); *Gowdy v. Bd. of Educ. of City of Paterson*, 98 A. 12 (N.J. 1916); *People ex rel. First Nat'l Bank of Stevens Point, Wis. v. Village of Stickney*, 116 N.E.2d 924 (Ill. App. Ct. 1954); *Neidhardt v. City of Wood River*, 69 N.E.2d 345 (Ill. App. Ct. 1946)). "The granting of the writ 'is not a discretionary matter. *Mandamus* is the only remedy of the creditor for the enforcement of his judgment. This is a well-established doctrine.'" *Id.* (brackets and ellipsis omitted) (quoting *Hourigan v. N. Bergen*

*Twp*, 172 A. 193, 195 (N.J. Err. & App. Ct. 1934)).

This is the majority rule. *Cf. Ex parte Jones*, 399 So. 2d 246, 247 (Ala. 1981) ("Mandamus is a proper remedy to enforce a judgment against a municipal or public corporation and it has been generally used for such purpose in this state." (quoting *State ex rel. Hufft v. Knight*, 121 S.W.2d 762, 764 (Mo. Ct. App. 1938)); *City of Ocoee v. State ex rel. Harris*, 20 So. 2d 674, 675 (Fla. 1945) ("As we construe the section of the statute, *supra*, it does not preclude mandamus against a municipality to require the payment of a judgment. It appears to us that to so construe the statute would be equivalent to holding that a judgment creditor of a municipality would have no means available to enforce the payment of such judgment."); *State ex rel. State Highway Comm'n v. Quesenberry*, 383 P.2d 255, 256 (N.M. 1963) ("Mandamus is one of the remedies and often the only one available to compel a governmental body to pay a money judgment."); *Adler*, 63 A.2d at 23 ("An alternative to execution for a plaintiff with a valid judgment against a municipality or public corporation may be mandamus which compels municipal officials to pay a valid judgment."). *See also generally* 52 Am. Jur. 2d *Mandamus* § 137 ("A judgment creditor of a public corporation is not generally entitled to levy execution on the property of the corporation in the absence of a statute expressly granting that right, so that the writ does not lie to compel the levy of execution or seizure of the funds to enforce a judgment, but if payment of the judgment is demanded and refused, the creditor may have no adequate remedy but by mandamus, and in such case the writ will issue to subject the surplus funds in the treasury of the corporation to the claim. This is true even where the issuance of *fieri facias* or any writ of such nature on a judgment is prohibited by statute. Mandamus in such cases is not a new action, but is ancillary to, and in aid of, the judgment, and serves the same purpose as a writ of execution." (footnotes omitted)). Based on these authorities, the undersigned recommends that the Court reject Olson's argument that section 111(a) of title 30 of the Virgin Islands Code is unconstitutional. If a judgment were entered against WAPA, and if that judgment awarded monetary damages, and if WAPA

did not appeal or did appeal and the judgment were affirmed, and if WAPA refused to satisfy that judgment, mandamus could issue to compel WAPA to satisfy the judgment. WAPA is not judgment proof and therefore there is no reason to declare unconstitutional the statute exempting WAPA's "property including funds of the Authority . . . from levy and sale by virtue of an execution . . . ." 30 V.I.C. § 111(a).

The undersigned also recommends that the Court deny Olson's motion to declare Virgin Islands Code, title 30, section 120 unconstitutional. Section 120 provides that "[a]n injunction shall not be granted to prevent the application of this chapter or any part thereof." 30 V.I.C. § 120. Identical language can also be found in section 1111 of title 29 of the Virgin Islands Code, concerning the Economic Development Authority, and in section 537, title 23 of the Laws of Puerto Rico, governing the Port Commission of Ponce. Similar language can also be found in other statutes enacted by Puerto Rico, specifically the Puerto Rico Ports Authority, *see* 23 L.P.R.A. § 351 ("An injunction shall not be granted to prevent the application of §§ 331-352 of this title or any part thereof."), the Puerto Rico Electric Power Authority, *see* 22 L.P.R.A. § 216 ("An injunction shall not be granted to prevent the application of §§ 191-217 of this title or any part thereof."), and the Puerto Rico Industrial Development Company, *see* 23 L.P.R.A. § 289 ("An injunction shall not be granted to prevent the application of §§ 271-291a of this title or any part thereof."). The Puerto Rico statutes all predate the Virgin Islands statutes and are quite similar, with the Ponce Port Commission Act being the closest, even though the subject matter differs. The undersigned has not found any other jurisdiction having a statute with similar language. Nonetheless, the Court is not left without guidance.

"One of the cardinal principles of statutory interpretation requires [that courts] . . . apply 'the plain meaning' of the statute whenever it can be ascertained." *Rohn*, 57 V.I. at 643. Section 120's language is plain, and its meaning is clear: courts cannot issue an injunction against WAPA if that injunction would *prevent* the application of chapter 5 of title 30 of the Virgin Islands Code. But section 120 does not prohibit

courts from issuing an injunction that would compel WAPA to comply with chapter 5. And that is what Olson seeks. "The term 'to enjoin' ordinarily means to 'require,' 'command,' or 'positively direct' an action or to 'require a person to perform, or to abstain or desist from, some act.'" *Garland v. Gonzalez,* 142 S. Ct. 2057, 2064 (2022) (ellipsis omitted) (quoting Black's Law Dictionary 529 (6th ed. 1990)). "When a court 'enjoins' conduct, it issues an 'injunction,' which is a judicial order that 'tells someone what to do or not to do.'" *Id.* (citation omitted). Although the words "injunction" and "enjoin" are commonly thought of as telling a party what it may not do, an injunction can also tell a party what must do, as noted by Supreme Court of the United States in *Garland.*

Although this might, at first glance, provide support for Olson's claim that section 120 is unconstitutional because it "offend[s] due process[,]" (Declare Mot. 19), the statute must be read as a whole, and effect given to all words therein. And here, the authority to grant injunctions against WAPA is limited to preventing the application of the laws applicable to WAPA. (*Accord* Pl.'s Memo in Opp'n to Intervenor's Mots. to Dismiss and/or for Summ. J. 7 n.2, (ECF No. 23), *Cabot LNG Corp. v. P.R. Elec. Power Auth.*, No. 3:94-cv-2036 (D.P.R. Nov. 14, 1994), *available at* 2005 WL 1827758 ("AES' and Eco's anti-injunction argument fails for the same reason. 22 L.P.R.A. § 216 states that an injunction 'shall not be granted to <u>prevent</u> the application of Sections 191-217 of this title or any part thereof.' This is an action to <u>enforce</u> Section 205. It cannot be characterized as an effort to enjoin the exercise of PREPA's management discretion because that discretion is limited by a variety of provisions contained in 22 L.P.R.A. §§ 191-217, including the bidding requirements of Section 205." (citation and brackets omitted) (emphasis in original)).[10] Limiting the authority of courts to enjoin WAPA from "issu[ing] and sell[ing]

---

[10] The court rejected the plaintiff's request for an injunction because it had unclean hands and did not address the distinction between and injunction to compel compliance with the statute versus an injunction to prevent compliance. *See Cabot LNG Corp. v. P.R. Elec. Power Auth.*, 922 F. Supp. 707, 711 n.5 (D.P.R. 1996) ("Plaintiff originally requested a preliminary injunction. However, because Plaintiff actively participated in the procedure, it has 'unclean hands.' . . . Plaintiff therefore is barred from seeking equitable relief . . . .").

bonds from time to time[,] 30 V.I.C. § 106(a), or from "mak[ing] contracts[,]" *id.* § 105(5), or from advertising for competitive bids, *see id.* § 116, as only a few examples, are all sound policy decisions for the Legislature of the Virgin Islands to have made. Imagine if WAPA were to stop soliciting competitive bids, in violation of section 116(a) of title 30, and instead awarded contracts on a different basis. To conclude that an action to compel WAPA to comply with section 116 was barred by section 120's prohibition against injunctions would be absurd and statutes should not be construed in a way that would render them absurd. *See Rohn*, 57 V.I. at 646 n.6.

Here, the plain language of section 120 clearly prohibits an injunction that would prevent the application of title 30, chapter 5. But nothing in section 120 prohibits courts from granting an injunction requiring WAPA to comply with title 30, chapter 5. If the Legislature had wanted that outcome, they would have used more straightforward language providing that no injunction shall issue against WAPA. Instead, the Legislature chose only to restrict the courts' equitable authority when granting an injunction will prevent WAPA from carrying out functions "declared to be necessary in the public interest . . . ." 30 V.I.C. § 101(f). For this reason, the undersigned recommends that the Court deny Olson's motion to declare unconstitutional section 120 of title 30 of the Virgin Islands Code.

### E. *Sua Sponte* Grant Leave to Amend the Pleadings

Lastly, the undersigned recommends that the Court *sua sponte* grant the parties leave to amend their pleadings. *Reynolds v. Rohn*, 70 V.I. 887 (2019), involved a motion for judgment on the pleadings, which was granted, and a motion for reconsideration which also sought leave to amend the complaint, which was denied. *See id.* at 890-91. On appeal, the Virgin Islands Supreme Court affirmed. *See id.* at 900. Although the Court did not address the procedural nuances involved in seeking leave to amend a pleading after the pleadings have closed and a motion for judgment on the pleadings has been filed, the Supreme Court did state that "[t]he decision to allow such amendments is vested in the discretion of the

Superior Court." *Id.* at 899. And the Court further explained the grounds for denying amendment, namely "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment.'" *Id.* (quoting *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 534 (2012) (brackets omitted)).

Although *Reynolds* is distinguishable because it was decided under former Superior Court Rule 8, courts have recognized that motions for judgment on the pleadings sometimes reveal deficiencies in those same pleadings. *See generally XO Bistro, LLC v. Anthony Merrill & White Star, LLC*, 2021 VI Super 74U (denying motion for judgment on the pleadings and *sua sponte* granting leave to amend third-party complaint); *Brunn v. Alger*, 71 V.I. 71 (Super. Ct. 2019) (denying motion for judgment on the pleadings and granting motion for leave to amend complaint). *Accord Strack v. Fed. Land Bank of Spokane*, 218 P.2d 1052, 1055 (Mont. 1950) ("'Where the pleading is susceptible to amendment, the court in its discretion may refuse a judgment on the pleadings, and under the prevailing rule is required to do so.'" (quoting 49 C.J. *Pleading* § 950 (1930)); *Atchison, Topeka & Santa Fe Ry. Co. v. Coulson*, 371 P.2d 914, 916 (Okla. 1962) ("'This court will not affirm a judgment rendered on a motion for judgment on the pleadings, because of insufficient allegations in any pleading, unless it clearly appears that the pleading could not have been amended, or the party elected to stand on the pleading as filed.'" (quoting *Owens v. Moraine*, 232 P. 818, 821 (Okla. 1925)); *Slogowski v. Lyness*, 927 P.2d 587, 588 (Ore. 1996) ("We note, however, that motions for judgments on the pleadings are not favored, and amendments should be granted readily so as to preclude the entry of such a judgment.").

Here, assuming the Court agrees with this recommendation, granting Plaintiff leave to file a second amended complaint would let her amend Count II to remove the references to legal authority, e.g., the Virgin Islands Bill of Rights, and let her remove from Count I the claims on which the Defendants' motion

is granted, e.g., dismissal of the requests for declarations of a state of emergency and WAPA's insolvency. Olson may choose to stand on her current pleading. But she should be given the opportunity to amend her pleadings if she chooses. Likewise, granting the Defendants leave either to file an amended answer (if Olson declines to file a second amended complaint) or to file an answer to the second amended complaint (if Olson elects to amend her pleading) will eliminate the need of the Court having to identify each specific paragraph in the Defendants' Answer that should be deemed admitted due to the Defendants' failure to comply with Rule 8. Additionally, as Lawrence J. Kupfer is no longer the Chief Executive Officer of WAPA, an amendment is required pursuant to Rule 25 of the Virgin Islands Rules of Civil Procedure to substitute the current public official. *See* V.I. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## III. Conclusion

For the reasons given above, the undersigned **RECOMMENDS** that the Court:

(1) **DENY without prejudice** the Motion to Take Judicial Notice filed by Plaintiff on March 16, 2020;

(2) **GRANT** the Motion to Deem Conceded filed by Plaintiff on March 18, 2020;

(3) **VACATE** the bench ruling on September 7, 2021 denying the Joint Motion for Judgment on the Pleadings filed by Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer on December 29, 2020;

(4) **GRANT in part** the Joint Motion for Judgment on the Pleadings filed by Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer on December 29, 2020 (as supplemented) as to Count I (i) (request to declare Defendant Virgin Islands Water and Power Authority insolvent) and Count I (v) (request to declare a state of emergency as to Defendant Virgin Islands Water and Power Authority) and **DENY in part** the Joint Motion for Judgment on the Pleadings filed by Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer on December 29, 2020 (as supplemented) as to Count I (ii) (request to declare amount of statutory interest due to Olson), as to Count I (iii) (request to declare amount of

statutory interest due to class); and Count II (request to declare certain practices of Defendant Virgin Islands Water and Power Authority discriminatory); and **DENY in part without prejudice** the Joint Motion for Judgment on the Pleadings filed by Defendants Virgin Islands Water and Power Authority and Lawrence J. Kupfer on December 29, 2020 (as supplemented) as to Count I (iv) (request to declare amount of funds Defendant Virgin Islands Water and Power Authority must set aside); and

(5) **GRANT** the parties leave to amend their pleadings in response to any decision on this recommendation.

**DONE** this 18th day of October, 2022.

/s/

**JOSEPH T. GASPER**
Staff Master

**ATTEST**:
TAMARA CHARLES
Clerk of the Court

By:  Chery Parris
     Court Clerk III

Date:  October 18, 2022